Arthur O. **KLEIN,** Plaintiff,

v.

Donald W. **PETERSON,** Defendant.

Civ. A. Nos. 87–2661, 87–2950.

United States District Court, District of Columbia.

Aug. 16, 1988.

William J. Carter, Carr, Goodson, Lee & Foret, Washington, D.C., for plaintiff.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C. (Harris A. Pitlick, Associate Sol., Patent & Trademark Office, Office of the Sol., Arlington, Va., of counsel), for defendant.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

This matter is before the Court pursuant to 35 U.S.C. § 32 and Local Rule 213, which provides that a person "suspended or excluded from practice before the Patent Office may file a petition in this court against the Commissioner of Patents for review of such action...."

On August 20, 1984, a disciplinary proceeding, *Nakamura v. Klein,* was instituted in the Patent and Trade Office (PTO) against plaintiff pursuant to 35 U.S.C. § 32 and 37 CFR 1.348 (1984). Plaintiff was charged with four counts of misconduct arising out of the handling of eleven papers in ten separate patent applications, and in giving false answers in PTO Requirements for Information relating to two of the ten applications, in violation of 37 CFR §§ 1.344 and 1.56, DR 1–102(A)(4), and DR 6–101(A)(3) of the Code of Professional Responsibility of the American Bar Association.

On June 24, 1985, following an extensive period of discovery, an eight day hearing was had before an Administrative Law Judge (ALJ). Plaintiff was afforded the opportunity to put on a defense and to cross-examine the PTO's witnesses, and the parties were then given leave to file post-hearing submissions. On December 2, 1985 defendant moved to reopen or supplement the record based on newly discovered evidence. After requiring the PTO to disclose the new evidence to plaintiff, the hearing was reopened and the evidence submitted to the record. No testimony was taken at that one day session.

On May 2, 1986, the ALJ entered a Recommended Decision, holding that each of the charges was proven by clear and convincing evidence. The parties then filed exceptions to the. Recommended Decision with the Deputy Commissioner, who was. to review the ALJ's determination. The Deputy Commissioner on August 28, 1987 entered a decision in the disciplinary proceeding, which was withdrawn soon thereafter upon motion of the Solicitor. An Amended Decision, the decision under review in this case, was entered on October 19, 1987, essentially adopting the ALJ's recommendations and suspending plaintiff from practice before the PTO for a period of seven years. Execution of the last five years of suspension was suspended, and plaintiff was placed on probation for five years. The imposition of sanctions under the Decision was stayed pending appeal.

Plaintiff challenges the validity of the proceedings below on three grounds: (1) that the disciplinary process to which he was submitted was *per se* violative of due process; (2) that the proceedings were conducted in an arbitrary and capricious manner, and were therefore violative of due process; and (3) that the Solicitor failed to carry the burden of proving the charges by clear and convincing evidence. These arguments will be considered in turn.

It is clear that procedural due process is required in attorney discipline cases. *See In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). Plaintiff contends that the statutes and regulations governing

disciplinary proceedings within the PTO are impermissibly vague in that they fail to clearly establish proper procedural safeguards and guidelines, applicable standards of conduct, or standards of proof, and that they are therefore *per se* violative of due process. But this conclusion is not compelled by precedent, as plaintiff suggests. The Supreme Court has held that administrative agencies should be "free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *FTC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 143, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1939). Rather, the question whether plaintiff was deprived of his right to due process must be answered by an examination of the proceedings conducted against him.

■ A review of the administrative record shows that plaintiff was provided adequate notice of the charges, was able to depose those PTO officers involved with the investigation, was given the right to put on a defense and to confront adverse witnesses. Although plaintiff was denied access to some of the documents relating to his investigative file,[1] and to the complete files of previously adjudicated PTO disciplinary proceedings,[2] that denial did not constitute a violation of his due process rights. As plaintiff concedes, parties to agency proceedings are not entitled to pre-hearing discovery. *See Silverman v. CFTC,* 549 F.2d 28, 33 (7th Cir.1977). Discovery must be granted only if in the particular situation a refusal to do so would so prejudice a party as to deny him due process. *See e.g., Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). The Court finds that the adverse rulings of the ALJ regarding discovery did not materially harm plaintiff and that no infringement of his due process rights flowed therefrom.

■ Plaintiff also alleges affront to his due process rights by reason of the ALJ's grant of defendant's Motion to Reopen or Supplement the Record, forcing plaintiff "to combat late evidence produced out of the context of the hearing" which he "was not in the position to fully analyze ... and to prepare a complete rebuttal." Plaintiff's Brief at 60. However, the new evidence offered by defendant consisted solely of checks, with pages of accompanying documents, from plaintiff's own law firm. Defendant's Brief at 53. Furthermore, plaintiff was given the evidence prior to the hearing and was permitted to defend against it in any manner he desired.[3] The Court finds no error in the decision or the procedure regarding the reopened hearing.

Plaintiff has raised numerous other issues relating to alleged due process violations, all of which the Court has considered and deemed to be without merit.[4] In par-

1. It is not clear what portions of the investigatory file, if any, were ultimately withheld from plaintiff.

  One item over which there was substantial controversy was the "Hoffman transcript", which plaintiff asserts contained potentially exculpatory evidence. Defendant resisted revealing this document until such time as "it became impossible for [plaintiff] to tailor his defense around it." Defendant's Brief at 52. Plaintiff declined to review the document when it was offered, allegedly because defendant would surrender it only if Klein would attest to its non-exculpatory nature on the record. Plaintiff's Reply at 34. The ALJ found that plaintiff could have subpoenaed Hoffman to testify at the hearing as an alternative to viewing the transcript, and thus declined to order defendant to surrender the document. The Court sees no reason to disturb that ruling.

2. The files which were not made available as part of the disciplinary proceeding were those

wherein there was no reported decision of public discipline. Defendant took the position that these files were traditionally kept confidential to protect the name and reputation of the individuals involved, and that decisions from other cases were of limited relevance to this proceeding due to the highly individualized nature of disciplinary actions. Plaintiff ultimately gained access to many of the documents, in redacted form, through instigation of a Freedom of Information Act suit. *See Carter v. Department of Commerce,* 830 F.2d 388 (D.C.Cir.1987).

3. Plaintiff chose to defend against the new evidence by affidavit. Defendant asserts that because this tactic foreclosed cross-examination on the matter, it actually afforded plaintiff an advantage in the proceedings rather than the detriment alleged.

4. The Court has previously ruled that withdrawal of the August 28 decision and the eventual

ticular, the Court finds the various rulings of the ALJ before, during, and after the hearing to be well within his sound discretion and not constituting any deprivation of due process. The disciplinary proceedings, as instituted against Klein, were neither *per se* nor in their application violative of plaintiff's constitutional right to due process.

Plaintiff also challenges the Deputy Commissioner's determination on substantive grounds, claiming that the PTO failed to show by clear and convincing evidence his guilt as charged.

The function of the Court in a case of this nature is not that of a trier of fact. Rather, the responsibility of the Court is "to review what has been done to determine whether or not a fair hearing has been had and whether there is substantial evidence to support the action of the Patent Office." *Cupples v. Marzall*, 101 F.Supp. 579, 582 (D.D.C.1952), *aff'd*, 204 F.2d 58 (D.C.Cir.1959); *see also* 5 U.S.C. § 706. The scope of review does not contemplate *de novo* analysis of determinations below involving factual disputes; particularly when reviewing questions necessitating an evaluation of witness credibility, the Court will accord great deference to the finder of fact. Judicial review in these types of patent proceedings is limited to determining whether, on the basis of the evidence, the agency had substantial evidence to rule as it did.

■ Plaintiff takes exception with the Patent Office's finding of intentional conduct, as required to satisfy the charges, from evidence which shows only gross negligence. The law of this Circuit is clear

that fraud or dishonesty may not be inferred from mere negligence. In the proper circumstances, however, gross negligence may lead to a finding of inequitable conduct.[5] *Jaskiewicz v. Mossinghoff*, 822 F.2d 1053, 1058 (D.C.Cir.1987). Whether intent should properly be inferred from a party's gross negligence is a matter of fact. No single factor or combination of factors can always be said to *require* an inference of intent to mislead; yet an individual facing clear proof that he knew or should have known of the PTO's requirements can expect to find it difficult to establish the "subjective good faith" to prevent the drawing of an inference to mislead. *See FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1416 (Fed.Cir.1987). In the context of the evidence before the ALJ, the Court finds that the agency had substantial evidence to find that plaintiff failed .to make the showing of subjective good faith necessary to counter the presumption of intentional conduct, and therefore did not err in its determination of plaintiff's culpability.[6]

This conclusion is not altered by the fact that in reaching its decision, the agency relied in part on statistical evidence from the United States Postal Service. In prosecuting this case, the PTO adduced evidence showing that the average mailing time between New York (where plaintiff's office is located) to Washington, D.C. is five days. In addition, defendant presented evidence as to the time it took mailings from the Soffen firm, another patent law firm located a block away from plaintiff's firm, and from various Connecticut locations (from which plaintiff's papers might have been

---

issuance of the October 19 Amended Decision did not violate plaintiff's right to due process. *See Klein v. Peterson*, 696 F.Supp. 695 (D.D.C. 1988).

**5.** *In re Kozaburo Harita, et al.*, 847 F.2d 801 (Fed.Cir.1988) is not to the contrary. There, the court held that intent could not be inferred solely from a party's gross negligence, without a showing that the negligent party knew of the rules and practices he had violated. The court went on to note that an applicant charged with failure to disclose prior art nay attempt to convince the factfinder that, in the light of the circumstances of the case, an inference of intent

to mislead is not warranted. However, a mere denial of intent, without more, will not suffice to preclude an inference of intent. *Id.* at 809.

**6.** The agency acted within its authority in determining that plaintiff was responsible for mailing violations relating to two Certificates which he did not personally sign. If the evidence is sufficient to prove that plaintiff knew that the paper which he signed would be mailed after the date on the certificate of mailing, he may properly be found to have caused the paper to be filed in violation of 37 C.F.R. § 1.8.

mailed) to reach the PTO. On the basis of this evidence, the Solicitor argued that plaintiff's filings, because they arrived at the PTO headquarters much later that the statistics suggest they would have had they been filed on the date they were purportedly mailed, were in fact mailed at a later date.

While this statistical evidence of backdating and late mailing is clearly circumstantial in nature, it is an appropriate means of proving a case against plaintiff. The mere fact that such evidence was relied upon does not support plaintiff's assertion that "[s]omehow Arthur Klein was convicted based on statistics alone, even though all of the affirmative evidence offered was to the contrary." Plaintiff's Brief at 66. There was ample evidence in the record suggesting that the actual mailing dates of the subject papers were other than those averred in certificates signed, or caused to be signed, by plaintiff. The ALJ properly considered evidence of procedural safeguards (or lack thereof), check backdating, and other related matters in determining whether the Solicitor had proven his case. The fact that plaintiff presented rebuttal evidence does not automatically negate evidence from the Solicitor's case-in-chief; as in any case involving a factual dispute and where credibility is at issue, the ultimate resolution of the matter rests with the trier of fact, who must weigh the conflicting evidence and accord whatever amount of weight appropriate to the various assertions. There is no error to be found simply because the ALJ chose to disbelieve plaintiff's witnesses and to accept defendant's evidence.

On the basis of the record as it comes before this Court, and according the proper deference to findings of fact entered by the ALJ after assessing the credibility of the witnesses, the Court finds that the decision of the Deputy Commissioner is supported by substantial evidence. The Court further finds that the proceedings below were fairly conducted after due notice of the charges, and in accordance with fundamental principles of fair play and applicable procedural standards established by law. The Court is satisfied, based on the record

before it, that the rights of the plaintiff have been adequately protected, and accordingly affirms the findings and conclusions of the Deputy Commissioner.

Therefore, it is this 16th day of August 1988

ORDERED that the Amended Decision of the Deputy Patent Commissioner be and it is hereby affirmed; and it is further

ORDERED that the complaints in the above-referenced actions be and they are hereby dismissed.