866 F.2d 412
 9 U.S.P.Q.2d 1558
 Arthur O. KLEIN, Plaintiff-Appellant,
v.
Donald W. PETERSON, Deputy Commissioner of Patents &
Trademarks, Donald J. Quigg, Commissioner of Patents &
Trademarks, and the United States Department of Commerce,
Patent & Trademark Office, Defendants-Appellees.
 Nos. 88-1578, 88-1579.
 United States Court of Appeals,
Federal Circuit.
 Jan. 19, 1989.
Rehearing Denied Feb. 15, 1989.
Suggestion for Rehearing In Banc Declined Feb. 28, 1989.
 
 William J. Carter, Carr, Goodson, Lee & Foret, P.C., Washington, D.C., argued for plaintiff-appellant.
 Harris A. Pitlick, Associate Sol., U.S. Patent & Trademark Office, Arlington, Va., argued for defendants-appellees. With him on the brief was Fred E. McKelvey, Sol. Also on the brief was Nathan Dodell, Asst. U.S. Atty., of counsel.
 Before MARKEY, Chief Judge, NIES and MAYER, Circuit Judges.
 NIES, Circuit Judge.
 
 
 1
 Arthur O. Klein appeals from the order of the United States District Court for the District of Columbia, Klein v. Peterson, 696 F.Supp. 695, 8 USPQ2d 1434 (D.D.C.1988), affirming the Amended Decision of the Deputy Patent Commissioner, In re Klein, 6 USPQ2d 1547 (Dec.Comm'r Pat.1987), which suspended Klein from practice before the United States Patent & Trademark Office (PTO) for two years and placed him on probation for another five years. Sanctions were imposed following a disciplinary proceeding instituted in the PTO pursuant to 35 U.S.C. Sec. 32 (1982) and 37 C.F.R. Sec. 1.348 (1984). That proceeding began when Klein was charged with four counts of misconduct during his practice before the PTO, including violation of 37 C.F.R. Sec. 1.56 (1984) by submitting eleven Certificates of Mailing to "backdate" documents filed with the PTO; 37 C.F.R. Sec. 1.344 (1984) by filing documents late, thus neglecting legal matters entrusted to him; and 37 C.F.R. Secs. 1.344 & 1.56 and certain provisions of the American Bar Association Code of Professional Responsibility by falsely answering the PTO's "Requirements for Information" during the investigation stage of the proceeding. We affirm.[1]
 
 
 2
 * The matter was initially referred to an Administrative Law Judge (ALJ) in the Department of Commerce. After an extensive period of discovery and a hearing, which was later reopened to consider additional evidence, the ALJ issued a Recommended Decision holding that each of the four charges was proven by clear and convincing evidence and recommending that Klein be disciplined. In re Klein, 6 USPQ2d 1528 (Dep't Comm.1986). The Deputy Commissioner reviewed the ALJ's holding and adopted the ALJ's recommendation with some modification.[2] In re Klein, 6 USPQ2d 1547 (Dec.Comm'r Pat.1987). Pursuant to 35 U.S.C. Sec. 32, Klein then filed a petition for review of the Deputy Commissioner's decision in the district court.
 
 
 3
 In his petition, Klein asserted three challenges to the validity of the PTO's proceedings. He attacked the disciplinary proceedings as a per se violation of due process, claiming that the statutes and regulations under which such proceedings were conducted were void for vagueness. He also urged that the proceedings, as conducted, violated due process. Finally, Klein asserted that the PTO Solicitor failed to carry the burden of proving the charges by clear and convincing evidence. The district court considered and rejected each challenge in a thorough opinion.
 
 II
 
 4
 Klein urges reversible error in the district court's rulings on his procedural challenges to the propriety of the PTO's proceedings. We agree with the district court, however, that "[t]he disciplinary proceedings, as instituted against Klein, were neither per se nor in their application violative of [Klein's] constitutional right to due process." Klein, 696 F.Supp. at 698, 8 USPQ2d at 1436. Accordingly, we affirm the district court's order denying Klein's due process challenges on the basis of the court's opinion, those sections of which we adopt. Id. 696 F.Supp. at 697-98, 8 U.S.PQ2d at 1435-36.
 
 III
 
 5
 We also reject Klein's substantive challenge to the merits of the rulings made by the PTO and the district court. The PTO bore the burden of proving its charges against Klein before the ALJ by clear and convincing evidence. See Jaskiewicz v. Mossinghoff, 822 F.2d 1053, 1058, 3 USPQ2d 1294, 1299 (Fed.Cir.1987). The district court recognized that its function was not that of a trier of fact, but to review "whether there was substantial evidence to support the action of the Patent Office." Klein, 696 F.Supp. at 698, 8 USPQ2d at 1436. To affirm under the substantial evidence standard, a court must conclude that the record as a whole contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); see also SSIH Equip. S.A. v. United States Int'l Trade Comm'n, 718 F.2d 365, 381-82, 218 USPQ 678, 692 (Fed.Cir.1983) (Nies, J., additional views). Thus, the precise question raised before the district court and which this court must now answer is whether a reasonable mind could have found the evidence of misconduct clear and convincing.[3]
 
 
 6
 The principal charge, from which the other charges depend, is that Klein acted deliberately to mislead the PTO by representing that responses were mailed on certain dates when they were in fact mailed to the PTO after the dates specified. We hold that this charge is supported by substantial evidence.
 
 
 7
 In particular, the PTO's evidence showed that Klein experienced abnormally long delivery times for his filings with the PTO. Although the average mailing time from New York and Connecticut, where the responses were mailed, to the PTO was found to be five days,[4] the eleven certificates in question (of which Klein personally signed eight) arrived at the PTO, at best, eight days after they were certified as mailed and, at worst, over fifty days later. Klein attributes the delays to the United States Postal Service and attacks the statistical validity of the PTO's evidence, but the fact remains that no one in Klein's firm, other than Klein himself, experienced any mailing delays. Nor did other patent law firms in the same area.
 
 
 8
 Klein's firm recorded dates of PTO correspondence in a mail log. For all entries but the eleven papers in question, the "second date" entry is the date the firm received its return-receipt postcard from the PTO. In contrast, none of the relevant eleven entries showed such a date. Some entries corresponded to the PTO receipt date, some entries were simply absent, and some of the relevant log pages are missing from the log copies provided (the originals were apparently unavailable because lost in a move). Where there are entries for some of the subject papers, they are always the last entry on the log's page. Klein attributes these discrepancies to sloppy office practice and a misunderstanding of firm procedure by the employees who made the log entries. The inconsistency of the entries with all other firm mailings, however, is additional circumstantial evidence supporting the finding that the eleven certificates were not correctly dated.
 
 
 9
 Six of the eleven certificates required that fees accompany the papers when filed. In one of the six cases, the fee was charged to Klein's PTO deposit account and a check was not written. In four of the remaining cases, the dates of the checks accompanying the papers were out of chronological order when compared with the dates of the checks which bracket them. The final check was from a separate checkbook; it was apparently in sequence. Although the firm's checks generally reflect that their numerical order corresponded with chronological order, Klein pointed out that fifteen other checks, out of the approximately 400 written to the PTO during the time period examined, were out of sequential order with respect to check numbers and dates. Of those fifteen, however, nine are dated later rather than backdated in relation to the bracketing checks.
 
 
 10
 Klein's client correspondence further supports the PTO's charge. His routine practice was to inform clients when papers had been filed with the PTO by letter on the same day as the filing, or within at most two days thereafter. In eight of the eleven cases at issue, however, the letters were dated more than two days after the dates on the certificates of mailing. In all four cases for which out-of-sequence checks were written, the client letters were written late (four, six, ten, and eleven days after the certificate dates). Moreover, in all four cases the dates on the client letters corresponded with dates that would have placed the related checks in sequence. Klein does not address the client letter evidence.
 
 
 11
 Klein's contention on appeal is that the PTO did not prove its case by clear and convincing evidence and that, in order to find that it had, "the ALJ and the Deputy Commissioner chose to disbelieve all of Arthur Klein's evidence even though there was no basis stated for why they chose to disbelieve it." We disagree. First, it is not necessary to disbelieve all of Klein's evidence to find that he intended to mislead the PTO. Intent is found upon consideration of all the facts and circumstances involving the conduct in question. Jaskiewicz, 822 F.2d at 1059, 3 USPQ2d at 1299; see also Kansas Jack, Inc. v. Kuhn, 719 F.2d 1144, 1151, 219 USPQ 857, 861 (Fed.Cir.1983). Second, the record reveals that both the ALJ and Deputy Commissioner carefully considered Klein's evidence and stated specific reasons, such as internal inconsistency, when they discounted certain evidence.
 
 
 12
 Upon consideration of all the facts and circumstances involving Klein's conduct, we agree with the district court that there is substantial evidence to sustain the administrative finding that Klein deliberately intended to mislead the PTO by misrepresenting that certain papers were mailed on the dates stated in the certificates of mailing. Such intent need not be proven by direct evidence; rather, circumstantial evidence may permit an inference of intent. The circumstantial evidence is sufficient in this case to show that Klein intended to deceive the PTO when he filed the certificates of mailing at issue.
 
 
 13
 The second count charges Klein with neglecting legal matters entrusted to him. It is undisputed that some of the certificates of mailing were dated so as to prevent corresponding applications from becoming abandoned. Consequently, if Klein did not mail the certificates on the dates specified, the responses were mailed to the PTO after they were due and Klein neglected to prosecute the applications in a timely manner. Count II depends, therefore, on a factual determination common to the first count: whether Klein mailed the certificates on the dates he indicated they were mailed. Klein declines to make a separate argument addressing the second count. Instead, he merely states, "The acts charged in Count II are in effect the same as in Count I." Accordingly, based on the above discussion of Count I, we agree with the district court that substantial evidence supports the administrative finding that Count II was proven.
 
 
 14
 Counts three and four charge Klein with providing false answers to the PTO's "Requirements for Information" (RFI) relating to two, separate applications (each RFI was the subject of a count). Specifically, Klein stated that the dates entered in his office mail log were the dates the PTO received papers when, in fact, they were not. As previously noted, the firm's practice was to enter the date the firm received its return-receipt postcard from the PTO as the second date entered in the mail logs. He also stated that each of four entries in the mail log were sent to the PTO accompanied by a certificate of mailing when only one of the items was so accompanied.
 
 
 15
 The ALJ characterized Klein's answers as follows:
 
 
 16
 The misrepresentations contained in [Klein's] answers to the Requirements for Information indicate either an incredible and intolerable ignorance of his own office's practices or a calculated attempt at deception. I conclude that it was the latter. In either event, [Klein] knew or should have known the answers were false. The patent system depends more heavily than is usual in other practices upon the integrity of its practitioners, for the usual adversary is most often not present. The PTO was entitled to receive and rely upon counsel's answers, but his answers were false.
 
 
 17
 In re Klein, 6 USPQ2d at 1546-47 (footnote omitted). After adopting and incorporating by reference the ALJ's view, the PTO further stated that "[t]he attempted coverup which led to the false responses to the subsequent legitimate inquiries by the Patent and Trademark Office reveal [sic, reveals] an intolerable attitude and continuing pattern of misconduct." In re Klein, 6 USPQ2d at 1556. We agree.
 
 
 18
 Klein points out that another person in his office actually authored the RFIs for his signature and that unrebutted testimony indicated the author provided answers which he believed, incorrectly, were true. Such testimony establishes, Klein contends, that there was no intent to deceive the PTO through the responses. Klein's contention misses the point, however, because the belief of the author is of no benefit to Klein.
 
 
 19
 In view of the facts Klein knew, it is simply inconceivable, as the PTO concluded, that he thought his answers were true. Klein was lead attorney in a small firm having no more than four attorneys and agents during the relevant period. He reviewed all work before it was filed with the PTO. He personally made notations in the mail log and occasionally made spot checks of entries. Moreover, the second date entries stood out because they were written in different-colored (red) ink. Accordingly, we uphold the finding that Klein engaged in a calculated attempt at deception by providing false answers to the PTO's questions.
 
 
 20
 Klein insists that he had "no motivation to 'lie' " in his responses to the RFIs, because the PTO had in its possession the records involved and could easily check his answers. We do not find that argument persuasive. Moreover, it does not negate the presence of substantial evidence supporting the charges. Accordingly, we conclude that we must sustain the PTO's and district court's conclusion that Klein intended to "cover up" the truth sought by the PTO's investigation.IV
 
 
 21
 The PTO relies, and should be able to rely, upon attorneys to prosecute patents and answer its questions in an honest and forthright manner. Substantial evidence supports the finding that Klein failed to deal with the PTO in such a manner. Accordingly, we affirm the district court in all respects.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 This court has jurisdiction over this appeal under 28 U.S.C. Sec. 1295(a)(1) (1982). See Jaskiewicz v. Mossinghoff, 822 F.2d 1053, 1057 n. 10, 3 USPQ2d 1294, 1297 n. 10 (Fed.Cir.1987) (citing Wyden v. Commissioner, 807 F.2d 934, 937, 231 USPQ 918, 920 (Fed.Cir.1986) (in banc))
 
 
 [2]
 Compare In re Klein, 6 USPQ2d 1547 (Dec.Comm'r Pat.1987), with In re Klein, 6 USPQ2d 1528 (Dep't Comm.1986)
 
 
 [3]
 For a more extended discussion of the interrelationship between the "substantial evidence" standard of review and the "clear and convincing" burden of proof, see SSIH Equipment S.A. v. United States International Trade Commission, 718 F.2d 365, 380-81, 218 USPQ 678, 691 (Fed.Cir.1983) (Nies, J., additional views)
 
 
 [4]
 The government urges that the district court should have found that the average mailing time was two or three days. This dispute is immaterial to our disposition