**HOUSING AUTHORITY OF the COUNTY OF KING, Plaintiff,**

v.

**Samuel R. PIERCE, Jr., Secretary of the United States Department of Housing and Urban Development, Defendant.**

Civ. A. No. 88–0495.

United States District Court,
District of Columbia.

April 20, 1989.

Christopher Hornig, Florence Wagman Roisman, Roisman, Reno & Cavanaugh, Washington, D.C., John D. Blankinship, on brief, Montgomery, Purdue, Blankinship & Austin, Seattle, Wash., for plaintiff.

Eric J. Segall and Arthur R. Goldberg, Dept. of Justice, Washington, D.C. (John R. Bolton, Asst. Atty., Dept. of Justice, Jay B. Stephens, U.S. Atty., District of Columbia, Gershon Ratner, Howard M. Schmeltzer and Carl A. Tibbets, U.S. Dept. of Housing & Urban Development, of counsel), for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is the motion of the plaintiff, Housing Authority of the County of King ("HACK"), to reconsider and amend this Court's judgment of October 13, 1988. On that date the Court, considering cross motions for summary judgment, granted judgment in favor of the defendant, the Department of Housing and Urban Development ("HUD"). Upon reconsideration, the Court concludes that its prior judgment displayed insufficient sensitivity to the concerns of due process. The Court, therefore, shall amend its prior judgment so as to grant HACK a limited right of discovery, and to permit HACK an opportunity to present its full views to HUD for consideration by an official with authority to render a binding decision in HACK's case.[1]

---

1. The Court's prior ruling, among other things, suggested that HACK may have waived its right to due process in this case by rejecting HUD's offer to confer with a senior HUD official prior to commencement of HUD's recoupment scheme. In response to HACK's motion to amend, however, HUD revised its version of the facts so as to remove the factual predicate of the Court's conclusion. It appears that the HUD official before whom the aborted meeting was to have taken place did not, in fact, have final authority over HACK's case. Accordingly, the Court's discussion on this question (which, in any event, was dicta) is expressly withdrawn.

This Court's Memorandum Opinion of December 12, 1988, detailed the facts underlying this dispute. *See Housing Authority of the County of King v. Pierce*, 701 F.Supp. 844, 845–47 (D.D.C.1988). Nevertheless, an abbreviated description of the facts will assist in understanding the Court's decision to grant HACK's motion to amend.

The dispute between HACK and HUD arises out of utility subsidies HUD provided HACK during the period from 1981 to 1983.[2] In a nutshell, HUD contends that HACK failed to compute its utility expenses for that period in accordance with an "Interim Regulation" relating to such expenses that HUD had published in September of 1980. HACK's failure to do so, according to HUD, caused HUD to overcompensate HACK between 1981 and 1983 by some $570,611.

HUD initially notified HACK of its contention regarding the overpayments on November 9, 1983. At that time HUD invited HACK to respond in detail to HUD's position. HACK did so, disputing the precise details of HUD's conclusions, as well as expressing its position that the Interim Regulation was not applicable during the period. It appears that HUD took no action for a lengthy period after receiving HACK's response.

On August 6, 1986, HUD's Seattle Office notified HACK that HUD intended to take action regarding the alleged overpayments. HUD directed HACK to compute the amount of the overpayments and to return that amount to HUD. HACK refused to do so, and instead drafted, through counsel, a detailed letter to HUD's Seattle Office challenging the legality of HUD's position. For the most part, the letter attacked the propriety of the Interim Rule's adoption under the Administrative Procedures Act (the "APA"). However, the letter also requested advice as to "any administrative remedies" which HACK might be entitled to pursue before resorting to litigation.

HUD's Seattle office responded by rejecting HACK's APA challenge, and by informing HACK that, in the event "subsidy offset" were required in order to recoup the overpayments, HUD would proceed pursuant to 24 C.F.R. § 17 *et seq.* That provision, which expressly grants a hearing and discovery to aggrieved parties, is HUD's regulatory response to the Federal Claims Collection Act (the "Collection Act"), 31 U.S.C. § 3701 *et seq.* The Collection Act generally prescribes the procedures by which the federal government may enforce money claims against private parties.

Believing that HUD intended to act pursuant to 24 C.F.R. § 17 *et seq.*, HACK wrote on February 24, 1987, to Samuel Pierce, Secretary of HUD. HACK reiterated, but with substantially more detail, its opposition to HUD's proposed actions, and made a specific discovery request pursuant to 24 C.F.R. § 17.105. The request sought materials which HACK regards as necessary to formulate its opposition to HUD's position. Receiving no response, HACK wrote again on April 24 to restate its request for documents.

HUD responded with a letter dated May 4, 1987, which stated that HUD was "currently reviewing all materials associated with the matter" and which promised to inform HACK of the "need for a hearing and/or the outcome of [HUD's] review as soon as a determination has been made." On November 30, 1987, HACK again wrote to request compliance with its discovery request.

HACK apparently received no response until February 4, 1988. On that date, HUD's General Counsel notified HACK that HUD would effect the recapture, not pursuant to 24 C.F.R. § 17 *et seq.*, but pursuant to 24 C.F.R. § 990.110(e), which, according to HUD, "authorizes downward adjustments in the amount of operating subsidy." The latter provision does not provide for any type of hearing or discovery, and HUD therefore denied HACK's

---

**2.** HACK is a public housing authority operating in King County, Washington. Although HACK is a creature of state law (it is a non-profit public corporation), HACK receives annual federal operating subsidies from HUD.

request on those points. The letter also mentioned that Secretary Pierce had notified the Washington congressional delegation some time before that HUD had determined to move forward with the recapture of funds, and that HUD's Seattle office had been so notified. However, the record indicates that this letter was HACK's first notice that a final decision had been reached.

HACK immediately brought suit in this Court. HACK argued (1) that HUD is bound by the terms of 24 C.F.R. § 17, *et seq.*, to grant HACK a full discovery and a hearing before taking any action, and (2) that, even if those regulatory provisions are not expressly applicable, HUD denied HACK's Fifth Amendment right to procedural due process in reaching its decision.[3]

On October 13, 1988, this Court granted summary judgment in HUD's favor on both arguments. HACK has moved to amend the Court's judgment on the latter point, i.e., that notwithstanding the inapplicability of 24 C.F.R. § 17, *et seq.*, the procedures that HUD actually followed in reaching a final decision were consistent with the requirements of due process. In its earlier opinion, the Court concluded that because HACK had been able to present its case through extensive correspondence, HACK had been given an opportunity to be heard at a meaningful time and in a meaningful manner. However, upon further reflection, the Court reluctantly concludes that its earlier judgment was in error. The record suggests that HUD's last-minute change in position may well have prejudiced HACK's ability to present its case.

Further, HUD's unwillingness to provide HACK with even minimal discovery denied HACK the ability to tailor its arguments to the information upon which HUD based its decision. Accordingly, the Court shall vacate its prior judgment and order HUD to provide constitutionally adequate process before reaching a final decision in HACK's case.[4]

The Court addresses the two due process points in turn.

### 1. *HUD's Change in Position*

■ At the very least, due process requires that a party be aware that his or her "hearing" is taking place. The affront to due process that occurs when a party lacks such knowledge is compounded when government misrepresentations, regardless of how inadvertent, have induced the parties ignorance. *See, e.g., Mt. Sinai Med. Ctr. v. Mathews*, 425 F.Supp. 5, 13 (S.D.Fla. 1976) ("due process certainly requires that the government's representations of the procedure it has followed be accurate").

Here, HACK expressly inquired on August 20, 1986, as to the proper procedure for contesting HUD's intended recoupment of the alleged overpayments. HUD responded that the recoupment would proceed pursuant to 24 C.F.R. § 17 *et seq.* Implicit in this response was the promise that HACK would be entitled to discover relevant materials in HUD's possession pursuant to 24 C.F.R. § 17.105[5], and that HACK, at some point in the future, would be given a hearing on its claims. On the basis of this promise, each of HACK's sub-

---

3. HACK does *not* challenge the merits of HUD's decision in this lawsuit. HACK only challenges the legality of the *procedures* by which HUD reached its decision.

4. The Court only vacates that portion of its earlier judgment and Opinion which addressed the adequacy of HUD's procedures under the due process component of the Fifth Amendment. The remainder of the judgment and Opinion, which addresses the applicability of the Collection Act and HUD's administrative offset regulations in this case, as well as the availability of a common law right of recoupment, remain as previously stated.

5. That provision provides as follows:

**§ 17.105 Review of departmental records related to the debt.**

(a) *Notification by debtor.* A debtor who intends to inspect or copy Departmental records related to the debt as determined by the Secretary must send a letter to the Secretary stating his or her intention. The letter must be received by the Secretary within 20 calendar days of the date of the Department's Notice of Intent.

(b) *Secretary's response.* In response to timely notification by the debtor as described in paragraph (a) of this section, the Secretary will notify the debtor of the location and time when the debtor may inspect or copy Department records related to the debt.

sequent correspondence with HUD expressly sought materials pursuant to this provision. Although, in the meantime, HACK presented its position in reasonable detail to both the Seattle and Washington offices, there can be no question but that HACK contemplated receiving a hearing and *some* response to its document request. Thus, HACK made its arguments with the assumption that further process would be forthcoming, and that it would have a final, formal opportunity to present its position. This assumption was based upon HUD's express representation. HACK's trust in HUD was shown to be misplaced when HUD reached its decision without affording a hearing or discovery, and even before notifying HACK that neither procedural protection would be made available.

The effect of HUD's sudden, unannounced change in position was to deprive HACK of the opportunity to *knowingly* submit final arguments in opposition to HUD's plan. Obviously, the practical effect of this deprivation is unclear; it is entirely possible that HACK's "final" arguments would have differed not at all from those that it actually made. Yet, while the practical effect of the deprivation may be unclear, the constitutional effect is substantial. Due process must be "informed" process. Without a party's knowledge that he or she has the government's attention and must therefore make his or her pitch, it is simply unfair to inflict governmental action upon that party. It is also unwise, as the government's action will take place without the benefit of the best input that the party can provide.

Apart from the danger such action poses for the instrumental aspect of due process—the component of due process which seeks accuracy of result—the facial unfair-

ness of such action undermines the symbolic value that due process serves.[6] This is even more so when, as here, the party's failure to make a knowing, final presentation can be traced directly to reliance upon misrepresentations by the government.[7] To hold otherwise, in this Court's view, would read the term "meaningful" out of the requirement stated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1975), that a party be given an "opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333, 96 S.Ct. at 902.

2. *HUD's Failure to Provide Discovery*

■ Discovery is not a *sine qua non* of due process. Yet, due process may be denied where discovery is not granted. The facts control: "[D]iscovery must be granted if in the particular situation a refusal to do so would so prejudice a party as to deny him due process." *McClelland v. Andrus*, 606 F.2d 1278, 1286 (D.C.Cir.1979). *See also Klein v. Peterson*, 696 F.Supp. 695, 697 (D.D.C.1988) (Greene, J.). This principle reflects the bedrock rule that an agency must always endeavor to mold its procedures to the requirements of due process. *See Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).

The Court's view that the dispute between HACK and HUD is essentially "legal" colored its previous conclusion as to the procedures necessary to comport with due process in this case. Specifically, the Court's determination that the dispute is "legal" led it to underestimate the importance to HACK of the limited discovery which it sought.

Upon further reflection, the Court concludes that the dispute is more subtle than its previous Opinion might suggest. Any facile distinction between disputes of "law"

---

6. *See, e.g.,* Tribe, *American Constitutional Law,* § 10–15 p. 744 (2d ed. 1988) ("Among the formal procedural safeguards ordinarily held to be required by due process, perhaps the two most striking—*the right to be heard* and *the right to hear why*—are ultimately more understandable as inherent in decent treatment than as optimally designed to minimize mistakes,").

7. The situation at bar is obviously distinguishable from a case in which the government has provided a realistic opportunity for the final submission of a party's position, yet the party, through oversight or neglect, fails to take advantage of that opportunity. In such instances the fault lies with the party, not the government, and the party's failure essentially amounts to a waiver of the right to submit final arguments.

on the one hand and disputes of "fact" on the other is rife with difficulties. Law only has meaning as it is applied to facts, and, absent an agreed factual predicate, the firmness and clarity of a "legal dispute" disappears.

Here, no agreed factual predicate exists for what HUD describes as, and what this Court's earlier Opinion regarded as, the "legal dispute." The propriety of HUD's decision—both as to whether recoupment should occur, and if so, how it should occur and in what amounts—appears upon further reflection to implicate an array of possible conflicting factual contentions. In rendering its final decision, HUD necessarily assumed the existence of certain facts. The record, however, suggests that HACK has not been given access to these facts or to any documentation from which they may have been derived.[8] This state of affairs necessarily sits uneasily alongside the principle of due process which holds that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Goldberg v. Kelly*, 397 U.S. 254, 270, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970) (quoting *Greene v. McElroy*, 360 U.S. 474, 496–97, 79 S.Ct. 1400, 1413–14, 3 L.Ed.2d 1377 (1959).

Indeed, in the Court's view, HUD's failure to comply with HACK's minimal discovery requests in this case departs from the requirements of the Fifth Amendment. A brief survey of the necessary factual predicates of HUD's decision suggests the extent to which access to HUD's documentation might have permitted HACK to shape its arguments, and thereby present a "meaningful" opposition to HUD's proposed recoupment. As mentioned above, HACK disputes the procedural validity of the Interim Rule's adoption. HUD, in turn, must believe that the rule was validly adopted. In light of this dispute, HACK has requested documentation relating to the administrative processes followed in adopting the Interim Rule. Although this dispute may ultimately be deemed "legal," it appears that HACK currently lacks the facts underlying HUD's "legal" conclusion. HACK also believes that HUD has selectively enforced the Interim Rule against HACK, that HUD has excluded other public housing authorities around the country from enforcement. Clearly, selective enforcement is a factor which should influence HUD's final determination. HACK's discovery requests seek information on this issue. Finally, and perhaps most importantly, HACK disputes the amount of the alleged overpayment. HACK therefore seeks access to any records that HUD may have relied upon in arriving at its final overpayment figure. HACK presumably seeks the information in order to show that it is "untrue." *Goldberg*, 397 U.S. at 270, 90 S.Ct. at 1021.

Because, in this Court's view, the due process component of the Fifth Amendment requires that HUD afford HACK access to any non-privileged documents that fall within HACK's discovery requests,[9] the Court will rescind its prior judgment in this regard and order HUD to make such discovery available.

## 3. *Appropriate Relief*

The circumstances of this case do not require a trial-type hearing. Nor do they require an oral hearing.[10] Instead, all that is required to afford HACK due process in

---

8. It may be more accurate to say that HUD appears never to have *identified* to HACK the facts or documentation upon which HUD based its decision. HACK may, in fact, possess information which is identical to HUD's; at this juncture, however, HACK has no sense of the relative significance, if any, which the information in its possession may have had to HUD's ultimate decision. HACK simply does not know.

9. HUD shall comply with the discovery request stated in the attachment to the letter, dated February 24, 1987, from John D. Blankinship to then-Secretary Samuel Pierce.

10. HACK appears to concede as much when it states in its papers that the hearing need not be "evidentiary," but need only be a "paper hearing." Plaintiff's Mem. in Support of Motion to Amend at 16.

this context is the opportunity to submit a *final* written opposition to HUD's proposed recoupment. In formulating this final written opposition, HACK may have access to all non-privileged materials in HUD's possession which fall within HACK's discovery request.

In addition, HACK is entitled to some proof that its final written submission has been considered by someone with authority to render a binding decision on HUD's behalf. HACK is also entitled to some reasonably detailed statement of the reasons underlying whatever final decision HUD makes.

This final statement, however, need not be as detailed as that which would be required to satisfy an "arbitrary and capricious" review under § 706(2)(A) of the Administrative Procedures Act. HACK's citation to cases which have applied the arbitrary and capricious test, such as *Motor Vehicle Manuf. Assoc. v. State Farm*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), misperceives the nature of the due process analysis. The arbitrary and capricious test supplies the standard of review applicable to the *substance* of an administrative decision on appeal; it aids a court in determining, albeit with great deference, whether an agency's decision was right or wrong. To this end, courts applying the test demand a reasonably detailed record and a sophisticated statement of reasons. The record required under the arbitrary and capricious test, however, is not, in itself, a prerequisite to due process, but instead merely permits a reviewing court to determine whether an agency's action was rational, i.e., consistent with the facts. The agency's *actions*, however, and not the record required under the arbitrary and capricious test, are what must satisfy due process.

That is not to say that due process does not require some reasoned response from HUD. In order to show that HUD's deter-

mination, should it be adverse to HACK, was drawn from information available to both parties, HUD "should state the reasons for [its] determination and indicate the evidence [it] relied upon." *Goldberg*, 397 U.S. at 271, 90 S.Ct. at 1022. This statement, however, "need not amount to a full opinion or even formal findings of fact and conclusions of law." *Id.*[11] In order to satisfy procedural due process, HUD need only provide a minimal, and perhaps even symbolic, recitation of the factors it took into account in arriving at its final determination. Such a meager showing might well be rejected on appeal as inadequate under the arbitrary and capricious test, but the problem would not be one of due process.

An Order as to the foregoing shall issue of even date herewith.

## ORDER

For the reasons stated in the Memorandum Opinion issued of even date herewith, it is, by the Court, this 20th day of April, 1989,

ORDERED, that the plaintiff's motion under Fed.R.Civ. 59(e) to alter or amend the judgment of the Court issued on October 13, 1989, shall be, and hereby is, GRANTED; and it is further

ORDERED, that the judgment of the Court issued on October 13, 1988, and that portion of the Memorandum Opinion of the Court issued on December 12, 1988, which holds that the defendants' actions were not inconsistent with the requirements of the due process component of the Fifth Amendment, shall be, and hereby are, VACATED; and it is further

ORDERED, that the plaintiff's motion for summary judgment shall be, and hereby is, GRANTED as to the question of defendant's compliance with the requirements of the due process component of the Fifth Amendment, and the defendant's mo-

---

**11.** *See also id.* 397 U.S. at 267, 90 S.Ct. at 1020 ("a complete record and a comprehensive opinion, which would serve primarily to facilitate judicial review and to guide future decisions, need not be provided at the pre-termination stage"). Obviously, however, if HUD is con-

cerned about defending its decision at the appellate level under the arbitrary and capricious test, it would be well advised to prepare a relatively substantial record and to provide an elaborate statement of the reasons for its action, whatever that action might be.

tion for summary judgment shall be, and hereby is, DENIED; and it is further

ORDERED, that, within 30 days of this Order, plaintiff shall be provided access to all non-privileged materials in defendant's possession which fall within the scope of plaintiff's request for documents, as contained in the attachment to the letter dated February 24, 1987, from John D. Blankinship, to then-Secretary Samuel Pierce; and it is further

ORDERED, that, within 60 days of this Order, plaintiff shall submit a final written opposition to the defendant's plan to "recoup" alleged overpayments made to the plaintiff between the years 1981 and 1983; and it is further

ORDERED, that, within 180 days of this Order, defendant shall, through an individual with authority to render a binding decision in this matter, issue a final decision, which decision shall contain a description of the reasons for the action taken and address plaintiff's contentions in reasonable detail; and it is further

ORDERED, that, until issuance of the final decision referred to in the preceding paragraph, the defendant shall be enjoined from withholding from any subsidy payment to the plaintiff any amounts in furtherance of defendant's plan to "recoup" alleged overpayments made to the plaintiff between the years 1981 and 1983; and it is further

ORDERED, that this action shall stand dismissed from the dockets of this Court without costs to either party, subject only to the plaintiff's right to make application to the Court in the event the defendant fails to comply with the foregoing.