HOFFMAN–LA ROCHE INC.,
Plaintiff-Appellant,

v.

LEMMON COMPANY,
Defendant–Appellee.

No. 89–1703.

United States Court of Appeals,
Federal Circuit.

June 25, 1990.

---

John C. Vassil, of Morgan & Finnegan, New York City, argued, for plaintiff-appellant. Of counsel were Richard C. Komson, of Morgan & Finnegan, and Murray S. Levin, of Pepper, Hamilton & Scheetz, Philadelphia, Pa.

Alan H. Bernstein, of Caesar, Rivise, Bernstein, Cohen & Pokotilow, Philadelphia, Pa., argued, for defendant-appellee. With him on the brief were Martin L. Faigus and Robert S. Silver.

Stanley H. Lieberstein, of Ostrolenk, Faber, Gerb & Soffen, New York City, was on the brief for amicus curiae New Jersey Patent Law Ass'n. Of counsel was Douglas A. Miro.

Before RICH, Circuit Judge, MILLER, Senior Circuit Judge, and SHARP, District Judge.[*]

ALLEN SHARP, Chief Judge.

This is an appeal from a judgment of the United States District Court for the Eastern District of Pennsylvania (Green, J.) holding that U.S. Patent No. Re. No. 28,636 was unenforceable and invalid. We vacate and remand.

## I.

### Background

In 1962, Dr. Emanuel Grunberg, a scientist employed by Hoffmann–La Roche, discovered that the combination of the chemical compounds sulfamethoxazole (SMX) and trimethoprim (TMP) safely and effectively treated sulfonamide-resistant strains of bacteria. On October 20, 1967, patent application serial number 676,700 was filed in the United States Patent and Trademark Office (PTO). That patent application was prepared by Attorney William G. Isgro, in-house patent counsel for Hoffmann–La Roche. In the application, two prior art patents were disclosed, namely, U.S. Patent Nos. 2,909,522 (Hitchings patent) and 2,888,455 (Kano patent). On January 9, 1969, the patent examiner rejected the claims of the original Grunberg patent application for obviousness under 35 U.S.C. § 103 in light of U.S. Patent No. 3,341,541 (Hoffer U.S. Patent), assigned to Hoffmann–La Roche.

In April of 1969, Hoffmann–La Roche, through its in-house patent counsel, Gerald Rosen, filed an antedating affidavit under 37 C.F.R. § 1.131 (Rule 131). Upon acceptance of that affidavit, the Hoffer Patent was removed as a § 103 bar to the issuance of a patent in the Grunberg application. In 1970, patent number 3,515,783 ('783) was issued. The '783 patent contained six claims for a therapeutic antibacterial composition and two claims (7 and 8) for a process for treating a warm-blooded animal afflicted with a bacterial disease.

In 1973, Hoffmann–La Roche obtained approval from the United States Food and Drug Administration (FDA) to market a pharmaceutical product containing the combination of SMX and TMP as claimed in the '783 patent. That prescription pharmaceutical product has at all times been manufactured and sold under the trademark BACTRIM.

On December 20, 1973, Burroughs–Wellcome by letter called four Hoffer documents to Hoffmann–La Roche's attention. They were (1) Netherlands Patent No. 6,514,178; (2) South African Patent No. 65/5618; (3) French Patent No. 1,453,056; and (4) Belgian Patent No. 671,982 (collectively, the Hoffer foreign documents).

Hoffmann–La Roche has a close working relationship with its parent, F. Hoffmann–La Roche & Co., Ltd., a Swiss Corporation (Swiss Roche). Swiss Roche filed foreign counterparts to the United States applica-

* The Honorable Allen Sharp, Chief Judge, United States District Court for the Northern District of Indiana sitting by designation.

tions filed by Hoffmann–La Roche. Hoffmann–La Roche likewise filed United States counterparts to the foreign applications filed by Swiss Roche. The foreign applications filed by Swiss Roche are in the Hoffmann–La Roche offices. The patent application information is kept on master cards and is readily accessible to Hoffmann–La Roche patent counsel. Specifically in 1965, Swiss Roche informed Hoffmann–La Roche that it was going to file Hoffer foreign counterparts to all the American Hoffer patent applications in 31 countries, including Belgium, France, The Netherlands and South Africa. There are also newsletters which are circulated between the offices regarding patent matters.

On January 28, 1974, Hoffmann–La Roche, again through counsel Rosen, filed an application for reissue of the '783 patent. In its petition, Hoffmann–La Roche brought the Hoffer foreign documents to the attention of the PTO. In support of its application for reissue, Hoffmann–La Roche filed the following (1) specification and claims; (2) a petition by the inventor, Emanuel Grunberg, with the assent of the assignee, Hoffmann–La Roche, to grant the reissue application and proffer of surrender of the original Grunberg patent; (3) a declaration and power of attorney; (4) a request for title report; (5) a request to charge deposit account; (6) the declarations of attorneys Isgro and Rosen; and (7) original Letters Patent '783. The claims were amended to refer to the treatment of sulfonamide resistant bacterial infection.

On September 10, 1974, the PTO rejected all eight claims of the reissue application under 35 U.S.C. § 102 and 35 U.S.C. § 103 in view of Hoffer Patent and the Hoffer foreign documents. Rosen prosecuted the reissue application. Finally, on July 14, 1975, Rosen authorized the cancellation of composition claims 1 through 6.

On December 2, 1975, U.S. Patent No. Re 28,636 ('636) was issued entitled "Antibacterial Composition Containing 5–Methyl–3–Sulfanilamidoisoxazole Trimethoxybenyl Pyrimidine". This is the patent in suit. The '636 patent contains solely two process claims. Claim seven is a process for treating a warm-blooded animal afflicted with a bacterial disease caused by sulfomethoxazole resistant strains of bacteria. Claim eight specifies the therapeutically effective amount of composition to be used in the process of claim 7.

Since the mid–1970's, appellee Lemmon has manufactured and sold quantities of branded and unbranded SMX/TMP-containing products to distributors, wholesalers, pharmacies, hospitals and physicians. Hoffmann–La Roche first offered Lemmon a license on the processes for the product. Lemmon refused and Hoffmann–La Roche sued Lemmon for inducing infringement. The '636 patent has now expired.

In the district court, Hoffmann–La Roche sought (1) a declaration that Lemmon induced the infringement of the '636 patent; (2) damages according to 35 U.S.C. § 284; (3) attorney fees pursuant to 35 U.S.C. § 285; and (4) costs under Rule 54, Federal Rules of Civil Procedure. Lemmon requested (1) a declaration that the '636 patent was invalid; (2) a declaration that the patent-in-suit is unenforceable due to Hoffmann–La Roche's inequitable conduct; (3) attorney fees under 35 U.S.C. § 285; and (4) costs under Fed.R.Civ.P. Rule 54.

## II.

### *District Court Decision*

On August 7, 1989, the district court entered its memorandum and order to comply with Rule 52, Fed.R.Civ.P. The factual determinations made there are subject to the limited appellate review of *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The basic relevant facts are not in serious dispute.

With reference to the conduct of Mr. Isgro in the original application, the district court decided:

Mr. Isgro may have acted negligently by not recognizing the significance of the Hoffer U.S. Patent. After a review of all the evidence, however, I find that Mr. Isgro did not act with the requisite "culpability." Mr. Isgro, a credible witness, has consistently claimed that he did not

view the Hoffer U.S. Patent as being material information. Moreover, Mr. Isgro did cite the Kano and Hitchings Patents, which were indeed pertinent prior art. Thus, I conclude that the credible evidence does not support the inference that Hoffmann–La Roche engaged in inequitable conduct during the filing of the original Grunberg patent application.

In regard to the conduct surrounding the Rule 131 affidavit, the district court found that the Hoffer foreign documents were highly material and that Rosen and Hoffmann–La Roche were clearly culpable. The district judge found the evidence to be clear and convincing that Rosen was grossly negligent in not citing the Hoffer foreign documents which would have barred the issuance of the '783 patent. However, the examiner did know of these documents on reissue and did issue two process claims. The district judge further concluded that Rosen acted with the intent to deceive the PTO. Therefore, on the issue of the Rule 131 affidavit, the district judge held that Hoffmann–La Roche acted with inequitable conduct before the PTO.

In support of the findings, the judge in footnote 14 stated:

As the Federal Circuit has held:

intent need not be proven with direct evidence. It may be proven by showing acts the natural consequences of which are presumably intended by the actor. Proof of deliberate scheming is not needed; · *gross negligence is sufficient. Gross negligence is present when the actor, judged as a reasonable person in his position, should have known of the materiality of a withheld reference* (emphasis supplied by district court).

*J.P. Stevens & Co., Inc. v. Lex Tex, Ltd., Inc.,* 747 F.2d 1553, 1560 (Fed.Cir.1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985).

In regard to the conduct during reissue, the district court decided:

[T]hat Hoffmann–La Roche violated the duty of candor and good faith when it filed for reissue without disclosing all of the background circumstances surrounding the '783 and '636 patents.

Again, Rule 1.56 imposes a duty to disclose material information. As the Rule states, "[s]uch information is material where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." Rule 1.56.

A reasonable examiner would have considered Hoffmann–La Roche's relationship with Swiss Roche, and the procedures they employed, to be material. Only with this information could the Examiner fully investigate Mr. Rosen's stated reasons for not disclosing the Hoffer foreign documents.

Mr. Rosen acted grossly negligent since he should have known of the materiality of the withheld information. *See J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.,* 747 F.2d at 1560. The intent to deceive can be inferred from this gross negligence.

The district judge found Rosen grossly negligent when he withheld material information in seeking reissue of the patent. The district judge, relying on *J.P. Stevens,* 747 F.2d 1553, 223 USPQ 1089 (Fed.Cir. 1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985) held that the intent to deceive was established by a finding of gross negligence. Thus, the district judge found that Hoffmann–La Roche acted with inequitable conduct when it sought reissue of the patent. The judge then found the '636 patent to be invalid under § 251 because Hoffmann–La Roche "acted with an intent to deceive." Hoffmann–La Roche brings this appeal challenging the holdings of inequitable conduct and the invalidity because of intent to deceive in applying for reissue.

## III.

### Standard of Review

█ Inequitable conduct is determined by the district court judge and is reviewed on appeal under an abuse of discretion standard. The appellant must establish that the district court's ruling is based on clearly erroneous findings of fact or a misapplication or misinterpretation of applica-

ble law, or that the district court ruling evidences a clear error of judgment. *Kingsdown Medical Consultants Ltd. v. Hollister Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

## IV.

### Analysis

The decision of the district court must be viewed as dealing with two different patent prosecutions. The original prosecution involved the Rule 131 affidavit [1] and the second prosecution involved the reissue application. The district judge found that Rosen acted with inequitable conduct before the PTO during the course of both of these prosecutions.

■ For there to be a holding of inequitable conduct in the prosecution of a patent, the district court must determine that there was intent to deceive the PTO. In *Hewlett–Packard*, this court said:

Inequitable conduct requires a finding of an intent to mislead or deceive the PTO. Such intent usually can only be found as a matter of inference from circumstantial evidence. *See, e.g., Klein v. Peterson*, 866 F.2d 412, 415, 9 USPQ2d 1558, 1560 (Fed.Cir.) ("circumstantial evidence may permit an inference of intent"), *cert. denied*, —— U.S. ——, 109 S.Ct. 2432, 104 L.Ed.2d 989 (1989).

*Hewlett–Packard v. Bausch & Lomb*, 882 F.2d 1556, 1562, 11 USPQ2d 1750, 1755 (Fed.Cir.1989). After *Hewlett–Packard*, this court in *RCA Corp. v. Data General Corp.*, 887 F.2d 1056, 1065, 12 USPQ2d 1449, 1456–57 (Fed.Cir.1989), stated that "a *finding* of intent to deceive the PTO is necessary to sustain a charge of inequitable conduct" (emphasis in original).

■ In finding the intent to deceive in both prosecutions, the district judge concluded that because he found gross negligence, the requirement of an intent to deceive was satisfied. However, this court

said in *Kingsdown Medical Consultants v. Hollister* that:

We adopt the view that a finding that particular conduct amounts to "gross negligence" does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.

863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988). Thus, the district judge was incorrect with respect to both holdings of inequitable conduct when he found gross negligence and then inferred the intent to deceive based on that finding alone. Instead, he must examine the gross negligence in light of all surrounding circumstances (e.g., good faith) to see if Rosen's conduct rises to the level of an intent to deceive.

## V.

### Conclusion

■ In accordance with the rule set down in *Kingsdown*, we vacate the court's judgment on inequitable conduct in both the original and reissue prosecutions. On the issue of the original patent prosecution we remand to the district court to ascertain whether there was intent to deceive in light of all the evidence, based on the standard set forth above. If the district judge finds that there was inequitable conduct during the original patent prosecution, then this court directs the district judge's attention to footnote 7 in *Hewlett–Packard* that said:

it is well settled that, in the reverse case of inequitable conduct during prosecution of the original application, reissue is not available to obtain new claims and thereby rehabilitate the patent. (citation omitted) (reissue unavailable to rescue patentee who committed inequitable conduct during original prosecution.)

*Hewlett–Packard*, 882 F.2d at 1563–64 n. 7, 11 USPQ2d at 1756 n. 7. Thus, if the district court finds that there was ineq-

---

1. There was also an allegation of inequitable conduct based on the failure to cite the U.S. Hoffer patent during the original prosecution.

However, the district court found no intent to deceive with respect to this conduct, and that finding is not contested on appeal.

uitable conduct in the prosecution of the original patent then the reissue patent is invalid and an appropriate judgment should be entered.

If the district judge finds that there was no inequitable conduct during the original prosecution, then the judge is to determine whether there was an intent to deceive during prosecution of the reissue application, again based on the proper legal standard.

## VI.

### Costs

Lemmon to bear the costs.

VACATED and REMANDED.