Edmund M. JASKIEWICZ, Appellant,

v.

Gerald J. MOSSINGHOFF, Commissioner of Patents and Trademarks, Appellee.

Appeal No. 87–1026.

United States Court of Appeals, Federal Circuit.

June 19, 1987.

Joseph G. Dail, Jr. (argued), McLean, Va., for appellant.

Harris A. Pitlick (argued), Associate Sol., Patent & Trademark Office, Washington, D.C., for appellee. With him on the brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol. Also on the brief were Joseph E. DiGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, Michael J. Ryan and Robert E.L. Eaton, Jr., Asst. U.S. Attys.

Before DAVIS, NIES and BISSELL, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from the United States District Court for the District of Columbia upholding the decision of the Patent and Trademark Office (PTO or Patent Office) to suspend appellant Edmund Jaskiewicz from practice before the PTO for a period of two years and to place him on probation for an additional five years, based on three counts of misconduct. The District Court (Curran, J.), in a Memorandum Opinion, granted appellee summary judgment and denied appellant's petition for review. We reverse Counts One and Three of the charges of misconduct, uphold Count Two, and remand for reconsideration of the penalty.

## I. Background [1]

Appellant was found to have committed three counts of misconduct before the PTO. Count One involved misconduct surrounding appellant's execution and filing of a patent application in the name of Pierre Baronnet. The client was a West German assignee of the inventor, Baronnet. During the course of the United States patent prosecution, Jaskiewicz sent the client a colloquial English version of the Baronnet German patent claims, together with the U.S. claims, with a request that the inventor review the translation in conjunction with the entire patent application. Appellant also requested that Baronnet sign and date an attached declaration. Under 37 C.F.R. § 1.57 (Rule 57) [2] the inventor was

---

1. The facts recited in this part are based on those found or accepted in the Commissioner's decision.

2. 37 C.F.R. § 1.57 stated:

The application must be signed by the applicant in person. The signature to the oath or declaration will be accepted as the signature to the application provided the oath or declaration is attached to and refers to the specifi-

required to sign an oath or declaration in person acknowledging the specification and claims to which it applied.[3] The client, in a telephone conversation with appellant, verbally approved the colloquial English translation and requested that Jaskiewicz submit the application along with a declaration that the inventor Baronnet had signed a few months earlier in conjunction with the same application but acknowledging a literal, rather than colloquial, translation of the German claims involved.[4] The PTO charged that submission of a patent application with a noncontemporaneous declaration of the inventor was improper under both Rule 57 and 35 U.S.C. § 111.[5]

The misconduct alleged in Count Two sprang out of appellant's request to amend the filing date of the Baronnet application. Appellant claimed that he had deposited the Baronnet application with the PTO on March 17, 1978, but received a filing date of March 30, 1978. On receipt of the petition to change the date, the PTO sent appellant a Requirement for Information,[6] which appellant claimed not to have received. The PTO then sent appellant a duplicate Requirement for Information, which appellant completed and remitted to the PTO. The PTO felt that Jaskiewicz had not adequately answered the queries posed and subsequently sent him a Second Requirement for Information, containing questions identical to those of the First Requirement, and requiring the inventor to answer questions three through seven. Upon reviewing the answers supplied, the PTO was dissatisfied with the replies and forwarded a Third Requirement for Information containing different questions from the First and Second Requirements. In response to the third inquiry, rather than respond to the questions asked, appellant withdrew his Request for a Correction of Filing Date, and petitioned that the application be accorded the March 30, 1978 filing date. The PTO then informed appellant that, since he had failed to answer the questions put forth in the Third Requirement for Information, the application was considered abandoned and forwarded it to the Solicitor of the PTO for review in light of the questions raised. Appellant subsequently submitted his responses to the Third Requirement for Information.

In originally answering three of the questions posed by the PTO, the PTO found that appellant tried to mislead the PTO into thinking that the inventor had all the application papers (including the colloquial English version) in front of him when he signed the declaration.[7] There was, however, evidence that the inventor had signed the declaration in conjunction with an earlier, literal English translation of the German claims and, at best, only verbally ratified the later colloquial translation some months later. The PTO contended that appellant breached his obligation of candor and good faith as required under 37 C.F.R. § 1.56 (Rule 56) in answering the Requirement for Information regarding the Baronnet application. The PTO further contended that appellant had engaged in fraud, deceit and misrepresentation in answering the questions, in violation of 37 C.F.R. § 1.344, Canon 1 and DR 1–102(A)(4)

cation and claims to which it applies. Otherwise the signature must appear at the end of the specification after the claims. Full names must be given without abbreviation together with any other given name or initial.

3. Rule 57 is no longer in existence.

4. The foreign client refused to ask the inventor for a second declaration.

5. 35 U.S.C. § 111 states:
Application for patent shall be made by the inventor, except as otherwise provided in this title, in writing to the Commissioner. Such application shall include (1) a specification as prescribed by section 112 of this title; (2) a

drawing as prescribed by section 113 of this title; and (3) an oath by the applicant as prescribed by section 115 of this title. The application must be signed by the applicant and accompanied by the fee required by law.

6. The PTO issues Requirements for Information when questions are raised regarding the propriety of an application. In this instance, the Requirements for Information were issued in order to obtain enough information to determine whether the application was properly executed and, therefore, entitled to any filing date.

7. The application papers consist of the specification and claims of the invention together with an oath or declaration. 37 C.F.R. § 1.51.

of the Code of Professional Responsibility of the American Bar Association (1970).

Count Three involved misconduct surrounding appellant's filing of a patent application in the name of Schorwerth. Appellant Jaskiewicz prepared a specification and claims and sent them, along with a blank declaration, to the patent department of his West German client with instructions that the inventor review and return all the documents to appellant so that appellant could file them with the PTO. The client sent Jaskiewicz only the signed declaration and remitted the remaining materials directly to the PTO. Jaskiewicz was unaware that the client had remitted the original application to the PTO and, in light of a potential priority deadline, independently filed the executed declaration plus a copy of the specification and claims with the PTO. Jaskiewicz's application was therefore duplicative and the Patent Office held it abandoned as unnecessary.

When questioned about the filing activity surrounding the Schorwerth Application, Jaskiewicz presented uncontroverted testimony that he communicated by telephone with the West German client after he received the signed declaration but prior to filing the application with the PTO. Appellant asserted that the client in the West German patent department was not certain whether it had already submitted the application to the PTO. Appellant testified that, because a priority deadline was approaching, he submitted the duplicate materials to the PTO in order to secure priority. Jaskiewicz also submitted notes allegedly substantiating this telephone communication, but the Administrative Law Judge (ALJ) concluded that the notes had been fabricated. The ALJ's conclusion was based, however, at least in part, on a misunderstanding of the facts in the case.

Specifically, the ALJ confused the facts incident to the Baronnet application with those in the Schorwerth application. Appellant did not produce any other papers regarding the Schorwerth application, contending that he had disposed of the files upon learning that the application had been abandoned as duplicative.

The PTO concluded that Jaskiewicz knew or should have known that the Schorwerth application was improperly signed but nonetheless deposited the application in the Patent Office. The PTO alleged that such actions violated Rule 56, 37 C.F.R. § 1.344, Canon 1 and DR 1–102(A)(4) of the Code of Professional Responsibility of the American Bar Association.

## II.  *Proceedings Below*

A hearing was conducted before an ALJ of the PTO on September 26, 1983. By Recommended Decision of August 16, 1984, the ALJ found that there was sufficient evidence [8] that appellant had committed the acts of misconduct charged and recommended disbarment.

On appeal to the Commissioner of Patents and Trademarks, the Commissioner adopted, with modifications, the recommended decision of the ALJ on October 1, 1984.[9] The Decision and Order stated that appellant had violated 37 C.F.R. §§ 1.344, 1.56, and 1.57, as well as Canon 1 and DR 1–102(A)(4) of the Code of Professional Responsibility of the American Bar Association. Appellant was suspended from practice before the PTO for a period of two years and placed on probation for an additional five years.

Jaskiewicz then filed a petition in the District Court for the District of Columbia under 35 U.S.C. § 32. The District Court

---

**8.** At the hearing, the ALJ commented that prior case law made it unclear whether the standard of proof in cases involving attorney misconduct was clear and convincing evidence or the preponderance of the evidence. The ALJ concluded, however, that sufficient evidence in the record could support the conclusion that Jaskiewicz violated his duties of candor and good faith before the PTO and was involved in dishonesty, fraud, deceit, or misrepresentation under either standard. *See also Dorsey v. Kings-*

*land,* 173 F.2d 405, 410 (D.C. Cir.), *rev'd on other grounds,* 338 U.S. 318, 70 S.Ct. 123, 94 L.Ed. 123 (1949).

**9.** The Commissioner recognized that the ALJ had confused the facts relating to the Baronnet application with those of the Schorwerth application and took this into consideration when issuing the modified opinion.

concluded that substantial evidence supported the decision of the PTO, granted summary judgment in favor of the appellee and denied appellant's petition for review. This appeal followed.[10]

### III. *The PTO's Authority*

The Government's position is essentially that, in prosecuting the Baronnet and Schorwerth patent applications, the appellant was derelict in his duty of candor and good faith in practice before the PTO, in violation of Rule 56. The Government also asserts that appellant's actions amounted to fraud, misrepresentation, and deceit in violation of 37 C.F.R. § 1.344, Canon 1 and DR 1–102(A)(4) of the Code of Professional Responsibility.

■ Appellant urges us to adopt the position that under Rule 56, which pertains to inequitable conduct before the PTO, sanctions are limited solely to holding a patent unenforceable. Appellant therefore claims that no attorney sanctions are proper under Rule 56.[11] However, Rule 56 expressly charges the attorney with a duty of candor and good faith before the Patent Office. In instances where a person entitled to practice before the PTO has breached that duty of candor and good faith in prosecuting a patent application, it may well be appropriate or necessary to issue sanctions directly against that attorney or agent—at least in circumstances where there has been an intent to deceive, defraud, or make misrepresentations to the PTO. This view is consistent with the Supreme Court's holding in *Kingsland v.*

*Dorsey*, 338 U.S. 318, 319, 70 S.Ct. 123, 124, 94 L.Ed. 123 (1949), where the Court, in affirming an order of the Commissioner of Patents barring an attorney from practicing before the PTO, stated that "the relationship of attorneys to the Patent Office requires the highest degree of candor and good faith." Furthermore, in *In re Milmore*, 196 USPQ 628 (Comr.Pats.1977) a registered patent agent was suspended by the Commissioner for having intentionally breached his duty of candor and good faith after having failed to call a pertinent reference to the attention of the patent examiner during the prosecution of the application. The Commissioner stated:

> It is in my opinion an abuse of a patent practitioners [sic] professional responsibility to *knowingly* withhold from the examiner the name and number of any reference which he believes would render certain claims of an application invalid if he were to succeed in getting them allowed.... For the foregoing reasons, the single charge placed against respondent is sustained.

*Id.* at 630 (emphasis added). We agree with this position.[12]

■ In addition to holding that Jaskiewicz had violated his duty of candor and good faith, the ALJ and the Commissioner also concluded that appellant's conduct in prosecuting the Baronnet and Schorwerth applications violated Canon 1[13] and DR–1–102(4)[14] of the American Bar Association (ABA) Code of Professional Responsibility[15] and 37 C.F.R. § 1.344.[16]

---

**10.** This court has jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1). *See Wyden v. Commissioner,* 807 F.2d 934, 231 USPQ 918 (Fed.Cir.1986); *Jaskiewicz v. Mossinghoff,* 802 F.2d 532, 231 USPQ 477 (D.C. Cir.1986).

**11.** Jaskiewicz's primary point is that Rule 56 was not promulgated under 35 U.S.C. § 31 ("Regulations for agents and attorneys") and that 35 U.S.C. § 32 ("Suspension or exclusion from practice") authorizes (in pertinent part) such action only where the attorney is "shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not comply with the regulations *established under section 31 of this title ...*" (emphasis added).

**12.** In effect, in disciplinary proceedings, Rule 56 is not applied because there is a violation of

"regulations established under section 31 of this title" but because the attorney, in knowingly violating Rule 56, is guilty of "gross misconduct" or is violating 37 C.F.R. § 1.344, *infra,* n. 16.

**13.** Canon 1 states: A lawyer should assist in maintaining the integrity and competence of the legal profession.

**14.** DR 1–102(4) states: A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

**15.** We note that disciplinary action under the ABA Model Rules is properly pursued under the Disciplinary Rules (DR's) but not the more general Canons of Ethics. The ABA promulgated

■ The basis for the ALJ's conclusion and the Commissioner's position on this appeal is that Jaskiewicz engaged in dishonesty, fraud, deceit, and misrepresentation in prosecuting the two applications in this case. This court and one of its predecessors have discussed at great length the issues of fraud and misrepresentation (as they relate to Rule 56 in the context of inequitable conduct before the PTO relating to prosecution of a patent application). *E.g., J.P. Stevens & Co. v. Lex Tex Ltd.,* 747 F.2d 1553, 223 USPQ 1089 (Fed.Cir. 1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984); *Norton v. Curtiss,* 433 F.2d 779 (CCPA 1970). In *Norton* the Court of Customs and Patent Appeals took account of the high degree of confidence and trust that must exist between the PTO and applicants for patents, but also noted that materiality was a critical concern in analyzing fraudulent conduct. *Norton, supra* at 793–94. Materiality (under Rule 56) is defined as "a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." Intent (or knowledge) is another critical element which must be present in determining whether there has been fraud or inequitable conduct. There must be not only a misrepresentation, but also actual knowledge of falsity or an obligation to know it. Mere negligence is not sufficient to infer fraud or dishonesty though gross negli-

gence may lead (in proper circumstances) to a finding of inequitable conduct. *N.V. Akzo v. DuPont de Nemours & Co.,* 810 F.2d 1148, 1 USPQ2d 1704 (Fed.Cir.1987).

## IV. *Counts One and Three*

We hold that, as to Counts One and Three, there was insufficient evidence, under the "clear and convincing evidence" standard, to sustain the administrative findings of fraud and deliberate intent to mislead. That higher standard is normally applicable to proof of fraud or dishonesty. *SSIH Equipment S.A. v. United States Int'l. Trade Comm'n,* 718 F.2d 365, 380–81, 218 USPQ 678, 691 (Fed.Cir.1983) (separate opinion of Nies, J.). Correlatively, the judicial standard of review calls for more scrutiny than if the trier's standard were merely "preponderance of the evidence." *Id.* at 383, 218 USPQ at 692.

■ We do not reach the question whether appellant's departures from normal requirements in filing the Baronnet and Schorwerth applications created material differences (or whether materiality is important in this kind of case) because we hold that there was inadequate proof that Jaskiewicz intended to deceive the PTO when he filed those applications.[17] True, the PTO is under severe limitations as to time and manpower, and it is incumbent upon attorneys and agents who prosecute patent applications to follow the procedural rules of the PTO. *See Precision Instruments Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89 L.Ed. 1381, 65 USPQ 133,

---

the DR's "to be adopted by appropriate agencies as an inspirational guide to the members of the profession and as a basis for disciplinary action when the conduct of a lawyer falls below the required minimum standards stated in the Disciplinary Rules." *ABA Model Code of Professional Responsibility,* ABA/BNA Lawyers' Manual on Professional Conduct (BNA) 01:301 (1986). In contrast, the Canons "are statements of axiomatic norms, expressed in general terms, from which the Disciplinary Rules are derived." *Id.* at 01:302. In this case, the PTO brought a disciplinary action against appellant under both Canon 1 and DR–1–102, which was not the ABA's intention. The PTO should have pursued appellant's infractions, if at all, under the appropriate DR, in this instance, DR–1–102.

16. This section, entitled "Professional Conduct," directs practitioners before the PTO to conform to the standards of ethical and professional conduct set forth in the Code of Professional Responsibility of the American Bar Association.

17. As shown in Part III, *supra,* the case against appellant proceeded, both under Rule 56 and under the cited regulations, as involving a subjective attempt to deceive the PTO. The disciplinary proceeding did not attempt to sanction appellant merely on the basis of gross negligence that does not lead to an inference of deceit.

138 (1945); *Gemveto Jewelry Co. v. Lambert Bros., Inc.*, 542 F.Supp. 933, 938, 216 USPQ 976, 980 (S.D.N.Y.1982). But appellant's actions as charged in Counts One and Three—while clearly lacking prudent judgment, negligent, and perhaps grossly negligent—do not rise to the level of intentional misconduct charged as the reason to deprive him for a substantial time of such a valuable right as the privilege to practice before the PTO. The PTO must look to all the facts and circumstances involving the questionable conduct before finding intentional misconduct.

In the case of the Baronnet application (Count One), the PTO particularly failed to take into consideration the difficulty of working with a foreign client[18] which in this case was not the inventor himself but, rather, an assignee of the inventor.[19] That foreign client resolutely refused to ask the inventor for a new declaration. In those circumstances appellant might well have thought that it made no real difference to the PTO if the earlier declaration were used after oral reconfirmation from the client.

██ With respect to the Schorwerth application (Count Three) the facts are likewise insufficient to prove fraudulent intent by clear and convincing evidence. Appellant presented uncontroverted evidence to the ALJ that he had made and recorded a telephone call to the West German client in regard to the filing of the Schorwerth application. The Commissioner presented no evidence to refute that Jaskiewicz had, indeed, had the telephone conversation. While the ALJ concluded that Jaskiewicz was not telling the truth, it is clear that that credibility determination was based in large part on a mistaken conception of the

facts—mixing up the incidents of the Baronnet application with those of the Schorwerth application. Because of the nature of disciplinary proceedings, it was incumbent on the Commissioner to prove that appellant is not fit to practice before the PTO. The Commissioner was therefore in error in requiring Jaskiewicz to corroborate his testimony; rather, the burden of proof remained with the Commissioner to prove that appellant was "no longer worthy of his office." *Charlton v. Federal Trade Comm'n*, 543 F.2d 903 (D.C. Cir.1976). That burden was not borne as to appellant's testimony. Moreover, there was a priority problem and appellant was anxious to file as soon as possible, so he made a duplicative filing—attaching the inventor's declaration to a copy of the application. If all these facts are accepted—as they must be—there is too slight a basis to say that Jaskiewicz intended to mislead the PTO when he simply made the duplicative filing.

The result is that Counts One and Three cannot stand.[20]

## V. *Count Two*

We take a different position on Count Two. The PTO charged that Jaskiewicz had not acted in candor and good faith before the PTO (in violation of Rule 56) and had engaged in fraud, misrepresentation, and deceit (in violation of Canon 1, DR–1–102(4), and 37 C.F.R. § 1.344) in answering the first Requirement for Information as to the Baronnet application. That Requirement asked the following now-relevant questions:

5. Was the declaration attached to the application when it was executed?

---

18. As noted in the ALJ's opinion, Jaskiewicz "testified that foreign companies normally handle everything through their patent departments; there is generally no direct contact between the [U.S. patent agent] and the inventor himself."

19. We nonetheless reject appellant's contention that he should be excused from compliance with Rule 57 because the rule was ambiguous. There is substantial evidence on the record below to support the ALJ's conclusions that Jaskiewicz knew or should have known that the submission

of a non-contemporaneous declaration did not comport with the formal requirements of the rule. Appellant had practiced before the PTO since 1955 and there is evidence in the record that he advised his client that the procedure was questionable.

20. The Commissioner has stated that Counts One and Three are much less serious than is Count Two and, taken alone, (absent the Second Count) might have resulted in a suspension of perhaps a few months with a two to three year probation period.

6. If no, of what was the applicant averring to be the inventor?

7. What did the applicant have before him when he executed the declaration?

8. Did counsel receive the application from the applicant in the condition in which it was deposited in the Office and, if not, what were the differences between the application received and the application deposited?

Jaskiewicz's response to these interrogatories was as follows:

5. The executed Declaration in its altered form was attached to the application when received by counsel.

6. No answer necessary.

7. Presumably, the applicant had before him the specification claims and prints of the drawings when the Declaration was executed.

8. Counsel received the application from the applicant in the condition in which it was deposited in the Patent Office and there were no differences between the application as received and the application as deposited.

The record shows that, at the time appellant made those responses, he knew all the relevant facts about the signing and oral confirmation of the original Baronnet declaration. He had himself described the procedure (as to that declaration) as "questionable." He must have known, from the PTO's issuance of the Requirement for Information, that the PTO was somehow troubled by the Baronnet application. Nevertheless, he conveyed to the PTO *none* of the difficulties and complexities of the Baronnet history which clearly affected—most directly—the answers he should have given to questions 5, 7, and 8.[21] Instead, his responses replied to the inquiries exactly as if the Baronnet application had been handled precisely in the way the PTO later argued that it should have been. The true facts (as he knew them) were withheld, misleading statements were made, and the clear impression was given that everything had been normal.

█ The PTO found that all this was done deliberately in order to mislead the PTO, and there is enough substantial evidence to support those findings (assuming they had to be made under the "clear and convincing" standard of proof). *See Heinemann v. United States,* 796 F.2d 451, 454, 230 USPQ 430, 433 (Fed.Cir.1986), *cert. denied,* —— U.S. ——, 107 U.S. 1565, 94 L.Ed.2d 758 (1987). In particular, it was impossible for appellant to have innocently answered question 8 as he did; in view of the facts he then knew, it is simply unbelievable that he actually thought that it was a completely true response to say summarily: "Counsel received the application from the applicant in the condition in which it was deposited in the Patent Office and there were no differences between the application as received and the application as deposited." That response entirely omitted the critical facts that the inventor had actually signed the declaration before the United States application had been prepared and had then done no more than orally confirm the United States application.

The strained explanations appellant now proffers[22] are wholly insufficient to justify his total failure to make mention of the facts on which his extraordinary theories rest, so that the PTO would understand why he thought the Baronnet application was properly filed. The absence of any real details is, in itself, a strong factor for

---

**21.** Those problems included: (1) the inventor's signing the declaration before the colloquial English version of the German patent claims was made, and with only the German patent application and claims with their literal English translation then before the inventor; (2) subsequent telephonic confirmation by the foreign client that the inventor had orally confirmed the U.S. claims and application; and (3) appellant's client's refusal to ask the inventor to execute a second declaration.

**22.** These include (1) the declaration was not executed when it was actually signed but when it was orally confirmed by the inventor; (2) the "heading" after question 2 refers to possible alterations in the application (referring to differences in type)—but it is clear that that "heading" referred only to questions 3 and 4, not to the remaining ones; (3) an "application" does not legally exist unless it contains the prescribed fee; and (4) the questions were ambiguous, which they were not.

finding his responses to have been fraudulent and deliberately lacking in candor.

We conclude that we must sustain the PTO's and District Court's conclusion that appellant intended, in answering the PTO's Requirement for Information, to obfuscate the actual circumstances surrounding the execution and filing of the Baronnet application. There is no excuse for appellant's having intentionally tried to mislead the PTO, particularly after it was plain that the Patent Office suspected some irregularities in the Baronnet application. The PTO rightly relies, and should be able to rely, upon attorneys and agents to answer its queries honestly and forthrightly.

## VI. *Sanction*

Even though we sustain Count Two, a grave offense, we remand to the PTO for reconsideration of the penalty. Appellant is 63 years old and has been a solo patent practitioner for a number of years. A two-year suspension will very likely preclude him from ever again practicing before the PTO; he will probably lose his practice and be unable to regain it after the lapse of the two years. We think that consequence is too severe a sanction for his offense, bad though it was, in the light of his heretofore blameless record and the fact that no patentee or applicant lost any rights because of his actions. The consequences of effective disbarment are especially serious because the attorney is not only deprived of professional honor but also stripped permanently of his chosen means to a livelihood. *Dorsey v. Kingsland,* 173 F.2d 405, 406 (D.C. Cir.), *rev'd on other grounds,* 338 U.S. 318, 70 S.Ct. 123, 94 L.Ed. 123 (1949). The PTO should therefore reconsider the sanction in the light of all the circumstances of the case.

AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.

NIES, Circuit Judge, dissenting in part.

The Commissioner's decision to suspend appellant was based on three charges. Two charges have been thrown out. I cannot agree that the single remaining charge rises to the statutory level of incompetence, disrepute, or gross misconduct, or such blatant or deceitful violation of PTO regulations to provide the necessary foundation for the Commissioner's action of suspending a practitioner from practice. *See* 35 U.S.C. § 32 (1982).* Given the appellant's long and apparently unblemished career, a factor which must be taken into account, and his full answers to the Commissioner's Third Requirement for Information when the Commissioner's questions became specific, the foundation for the Draconian action of suspension is simply, in my view, not present. Appellant explains he first answered the Commissioner's Requirement for Information as one would interrogatories, revealing as little as possible. That was poor judgment—the PTO should not be treated as an adversary—but not *gross* misconduct.

I do not condone appellant's lack of candor in dealing with the Office. Under the circumstances, the Commissioner could and should have warned appellant that the Commissioner deemed his actions unacceptable and could and should have noted the incident against appellant's record which might then be taken into account if future incidents showed a pattern of sharp practice. To deprive appellant of his livelihood on the circumstances here, however, even for a *de minimis* period, is not justified under the statutory authority of the Commissioner. Thus, a remand for mitigation is inappropriate. Under the statute, the Commissioner can only "suspend or exclude" an attorney. The single incident of misconduct here has not been shown to meet the threshold level of culpable intent for such action.

* **§ 32. Suspension or exclusion from practice**
    The Commissioner may, after notice and opportunity for a hearing, suspend or exclude, either generally or in any particular case, from further practice before the Patent and Trademark Office, any person, agent, or attorney shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not comply with the regulations established under section 31 of this title....