Steven E. **LIPMAN,** Plaintiff–Appellant,

v.

Q. Todd **DICKINSON,** Acting Commissioner of Patents and Trademarks, Defendant–Appellee.

No. 96–1548.

United States Court of Appeals, Federal Circuit.

April 20, 1999.

Maxim H. Waldbaum, Fried, Frank, Harris, Shriver & Jacobson, of New York, New York, argued for plaintiff-appellant. With him on the brief was William K. West, Jr., Pillsbury, Madison & Sutro, LLP, of Washington, DC.

Kevin Baer, Associate Solicitor, Patent and Trademark Office, of Arlington, Virginia, argued for defendant-appellee. With him on the brief were Albin F. Drost,

Acting Solicitor, and Nancy C. Slutter, Associate Solicitor.

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge,* and BRYSON, Circuit Judge.

Opinion for the court filed by Senior Circuit Judge ARCHER. Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.

ARCHER, Senior Circuit Judge.

Steven E. Lipman appeals the July 23, 1996 judgment of the United States District Court for the District of Columbia, 95–CV–774, granting summary judgment to the Commissioner of Patents and Trademarks (Commissioner). On undisputed facts, the district court held as a matter of law that substantial evidence supported the Commissioner's determination that Lipman violated his duty of candor under 37 C.F.R. § 10.23(b)(4) and (c)(2)(ii) (1996) to the United States Patent and Trademark Office (PTO) and that the sanction imposed, a public reprimand, was not an abuse of discretion. We affirm.[1]

## BACKGROUND

The facts are contained in the Memorandum Opinion and Order of the district court dated July 19, 1996 and in the decisions of the Commissioner of the PTO and the ALJ. To the extent pertinent, they are set out below.

Steven E. Lipman represented Ronald Wallace whose application for registration to practice before the PTO was disapproved on March 5, 1990 by the PTO's Office of Enrollment and Discipline (OED). Wallace's application was denied despite the submission of seventeen letters and affidavits attesting to his character and reputation. These included four affidavits executed by attorneys who were members of the Vinson and Elkins (V & E) law firm.

The V & E attorneys went into detail about the character and trustworthiness of Wallace, who was then an employee of that firm. In its disapproval of Wallace's application, the OED noted the supportive nature of the V & E affidavits, and specifically advised that Wallace might want to refer to the V & E affidavits if he reapplied.

Lipman prepared a draft of a petition to the Commissioner appealing the OED decision, which was due to be filed on May 7, 1990. The draft appeal petition was sent to Wallace for comment on April 27, 1990. In this draft Lipman relied heavily on the four V & E affidavits.

On April 30, 1990 Lipman received a sixteen page, single-spaced letter from J. Clark Martin, one of the V & E affiants. The letter stated that Martin and the three other V & E attorneys, who had previously filed affidavits in support of Wallace, had now changed their opinions of Wallace. Martin's letter stated that V & E had discovered new, additional facts that led the four affiants to believe that Wallace had not been candid with them or V & E's clients, had acted improperly while employed at V & E, and had acted improperly upon his separation from V & E. Martin's letter stated that the four V & E affidavits were not to be used "for any purpose whatsoever," and opined that Wallace and Lipman had a duty to notify the PTO of all of the activities outlined in his letter that bore directly on the issue of Wallace's candor and moral character. Martin's letter also asked for a copy of Wallace's appeal documents to ensure that the V & E affiants' request had been followed.

On receipt of Martin's letter, Lipman immediately telephoned Wallace and sent him a facsimile copy of the letter. Wallace told Lipman that Martin's accusations were based on misunderstandings and in-

---

\* Senior Circuit Judge Glenn L. Archer, Jr. vacated the position of Chief Judge on December 24, 1997.

1. The district court had jurisdiction pursuant to 35 U.S.C. § 32 (1996) and Local Rule 213.

ᐟ This court has jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1) (1996). *See Jaskiewicz v. Mossinghoff*, 822 F.2d 1053, 1057 n. 10, 3 U.S.P.Q.2d 1294, 1297 n. 10 (Fed.Cir.1987).

correct statements of fact. Lipman asked Wallace to prepare a written response to Martin's letter with Wallace's version of the events.

Lipman also consulted with Mr. Mittelberger, a lawyer in his firm, and had him modify the draft appeal petition to remove the references to the V & E attorneys by name and to remove quotations from their affidavits. The modified petition was filed with the Commissioner on May 7, 1990. The filed petition continued to refer to and rely on "seventeen" affidavits and letters, i.e. the same number as originally filed with the OED in support of Wallace's application. The number of affidavits and letters was not reduced to reflect the disavowal of the four V & E affidavits.

Before the modified appeal petition was filed Lipman wrote to Martin on May 4, 1990. Responding to Martin's request for a copy of the appeal documents as filed, Lipman stated that the appeal petition would not "directly refer to or quote from the Vinson & Elkins affidavits."

On May 7, 1990 Martin wrote Lipman another letter that was received by Lipman on May 8, 1990, the day after the appeal petition was filed. In this letter Martin informed Lipman that all the facts in his April 27 letter had been verified, and reiterated that the opinions of the four V & E attorneys regarding Wallace's character had changed since their affidavits were executed. Martin's letter also stated:

> Mr. Wallace and you had ample time last week to disclose to the PTO in the documents you are filing today with the PTO the matters recited in my April 27, 1990 letter. However, in your May 4, 1990 letter you assert only that the papers you are filing with the PTO today no longer directly refer to our affidavits....
>
> I am concerned that Mr. Wallace and you somehow indirectly gave the PTO the impression that our attorneys still maintain the same beliefs and opinions as are stated in the affidavits that are on file with the PTO.

In response Lipman wrote Martin on May 8, 1990, stating that he would not provide him with a copy of the appeal petition filed with the Commissioner but that a complete response to his April 27 letter would be forthcoming. On May 15, 1990 Lipman received Wallace's description of the events referred to in Martin's April 27 letter. Lipman then sent Martin a detailed 28–page letter describing Wallace's account of the events. In this letter and in a subsequent letter, Lipman asked for Martin's response.

On July 23, 1990 Lipman received a response from Martin which again confirmed the V & E affiants continued to hold their changed opinions as to Wallace's character. In the meantime, Martin had notified the PTO directly on June 29, 1990 that the four V & E affidavits were no longer valid and that they should not be relied on by the PTO. Lipman was not informed of Martin's direct contact with the PTO.

Based on Martin's response on July 23, 1990 Lipman wrote Wallace on July 30, 1990, to inform him that they must disclose to the PTO that the V & E affidavits had been withdrawn. Lipman began preparing a supplement to the appeal petition to that effect which he sent to Wallace on August 2, 1990. The supplement was not filed, however, because on August 2, 1990 Lipman received notice from the PTO that Wallace's registration proceeding was being returned to the OED in order that an investigation of the information received from Martin could be made.

In September of 1991, the OED initiated a disciplinary action against Lipman based on one count of violating his duty of candor as required, *inter alia*, under 37 C.F.R. § 10.23(b)(4) and (c)(2)(ii). Section 10.23(b)(4) provides that "[a] practitioner shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Section 10.23(c)(2)(ii) provides that "[c]onduct which constitutes a violation ... includes, but is not limited to ... knowingly giving false or misleading information or

knowingly participating in a material way in giving false or misleading information . . . to the [Patent and Trademark] Office or any employee of the Office."

According to the OED, Lipman violated his duty of candor by misrepresenting the number of valid affidavits. The charge read as follows:

> By participating in a material way in preparing and filing a petition with the Commissioner wherein the petition relied on affidavits and opinions of the affiants when [Mr. Lipman] knew the Affiants had said the affidavits could not be used for any purpose, and by withholding from the PTO the fact that affidavits and opinions expressed therein had been withdrawn by the affiants prior to the filing of the petition, [Mr. Lipman] was not candid with the PTO, [Mr. Lipman] misrepresented facts in the petition, and [Mr. Lipman] otherwise engaged in professional misconduct.

After conducting a hearing, the Administrative Law Judge (ALJ) issued an Initial Decision on April 28, 1994 in which he concluded that the OED had proved by clear and convincing evidence that Lipman had violated his duty of candor under the above-quoted regulation sections. The ALJ recommended that Lipman receive a public reprimand. In support of his decision, the ALJ made the following specific finding:

> 8. By filing a petition with the Commissioner of Patents and Trademarks which referred to the 17 affidavits and letters which had previously been filed and urging their consideration despite the fact that [Mr. Lipman] had been informed and therefore knew that the opinions expressed in four of those affidavits had changed and that the affidavits had been withdrawn and therefore were no longer valid, [Mr. Lipman] knowingly gave misleading information to the PTO and in so doing [Mr. Lip-

man] intended to mislead the PTO in to [sic] believing the opinions expressed in those affidavits were still valid.

*McLandish v. Lipman,* No. D91–18, Initial Decision at 12, (April 28, 1994) (Initial Decision).

Lipman appealed this decision to the Commissioner, who adopted the factual findings and the recommended sanction of the ALJ. *See McLandish v. Lipman,* No. D91–18, Commissioner's Decision at 19, (Mar. 27, 1995) (Commissioner's Decision). Lipman then sought review in the district court, which held that the decision was supported by substantial evidence and that the chosen sanction of a public reprimand was not an abuse of discretion. Lipman now appeals to this court.[2]

## DISCUSSION

A. We review the district court's grant of summary judgment *de novo. See Litton Sys., Inc. v. Honeywell, Inc.,* 87 F.3d 1559, 1566, 39 U.S.P.Q.2d 1321, 1324 (Fed.Cir.1996); *Burroughs Wellcome Co. v. Barr Labs., Inc.,* 40 F.3d 1223, 1227, 32 U.S.P.Q.2d 1915, 1919 (Fed. Cir.1994). Therefore, like the district court, we review for substantial evidence the Commissioner's decision that Lipman violated his duty of candor to the PTO when he relied on the V & E affidavits in the appeal petition. *See Klein v. Peterson,* 866 F.2d 412, 414, 9 U.S.P.Q.2d 1558, 1559 (Fed.Cir.1989) (holding that in a disciplinary case, the Federal Circuit reviews the Commissioner's decision for substantial evidence). "To affirm under the substantial evidence standard, a court must conclude that the record as a whole contains 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Klein,* 866 F.2d at 414, 9 U.S.P.Q.2d at 1559 (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

**2.** Because Lipman has not appealed the propriety of the sanction imposed, we need not

review the district court's determination that the sanction was not an abuse of discretion.

B. In this appeal, Lipman argues that the Commissioner, and in turn the district court, erred by failing to consider the totality of the evidence in determining whether Lipman intended to mislead the PTO by filing the May 7, 1990 appeal petition which contained references to the disavowed V & E affidavits. More specifically, Lipman contends that the PTO presented no evidence of intent to mislead and that the events occurring after the filing of the appeal petition, which showed that Lipman was acting in good faith and would correct the affidavit references if necessary, were "basically ignored." Lipman also argues that the Commissioner and the district court did not properly consider his professional obligation to his client. Finally, Lipman contends that the district court failed to "accord any real relevance or weight to the substantial and unrefuted testimony" of Lipman's seven distinguished experts.

The PTO argues that the district court correctly concluded that substantial evidence supported the finding that Lipman intended to deceive the PTO, that he knew the four V & E affidavits had been disavowed, and that they were material. It also contends that Lipman's duty of candor and good faith in dealing with the PTO was not inconsistent with any duty owed to his client and that the Commissioner did not fail to consider the entire record in reaching his decision.

■ C. The undisputed facts in this case demonstrate that Lipman filed an appeal petition with the PTO on Wallace's behalf that referred to and relied on seventeen affidavits and letters, including the four disavowed V & E affidavits. The appeal petition stated, in part:

> While OED states that the *17* sworn and/or executed *factual* statements by third parties attesting to petitioner's [Mr. Wallace's] character, integrity and remorse over the conflict of interest were "considered," OED refers to these statements as mere "testimonials" [FN14] and gives them no weight in determining the sanction imposed on

[Mr. Wallace]. Indeed, OED has postponed actual consideration of the weight to be given these 17 statements [FN15] until "applicant reappl[ies] for registration."

[Footnote 14 reads, "Although OED refers to these 'testimonials' in the pejorative sense, they are not merely 'testimonials'; they are *sworn* statements and *signed* letters from lawyers and lay persons that testify to many *factual* matters with which the affiants/declarants/signees have first hand, personal knowledge and, based upon those factual matters, contain their personal opinions. As such, they are entitled to significant weight in determining the appropriate sanction to be imposed on [Mr. Wallace], and it would be entirely arbitrary and capricious to accord them little or no weight in the context of the nature and scope of the sanction determination." ]

[Footnote 15 reads in pertinent part, "The 17 statements referenced by OED were submitted by [Mr. Wallace]."]

\*　　\*　　\*　　\*　　\*　　\*

In fact, the evidence of good moral character and repute is substantial. Each of the 17 letters and affidavits [FN23] details particular *facts* which underlie the author's/affiant's opinion that petitioner is honest and reliable and is of good moral character and repute.

[FN23 reads, "See notes 14 and 15, *supra.*"]

\*　　\*　　\*　　\*　　\*　　\*

Details of his work in these various associations are given in a number of the 17 letters of recommendation and affidavits.

*See* Initial Decision at 6 (emphasis in original).

These excerpts show that the appeal petition left the impression that all 17 affidavits and letters continued to be true and correct and were supportive of Wallace's character. For example, in one of the above excerpts, Lipman represented that "each" of the affidavits and letters (which

included the four disavowed affidavits) "details particular facts" supporting the opinions as to Wallace's character. Nowhere in the appeal petition was there any indication that any facts or opinions expressed in the 17 affidavits and letters had changed.

At the time of filing the appeal petition, Lipman knew that the V & E affiants had withdrawn their affidavits because of newly discovered facts about Wallace and because their opinions of him had changed. Lipman had received the 16 page letter of April 27, 1990 from Martin, which stated in part:

> While the facts stated in our prior Affidavits are true, the relevant facts stated therein are now incomplete: the Affidavits do not state the additional facts we have now learned about Ron Wallace which are stated in this letter. Moreover, our conclusions and opinions about Ron Wallace have changed by reason of the additional facts set forth in this letter. Since we are now aware of additional facts involving Mr. Wallace and the conclusions and opinions expressed in those prior Affidavits are no longer valid, the Affidavits provided by [the four V & E attorneys] are no longer to be used by Ron Wallace or you [Lipman] with respect to his efforts to obtain registration with the [PTO] or for any purpose whatsoever. If you have not already filed an appeal, you must not refer to our affidavits in any appeal documents. If you have already filed an appeal, you must file an amended appeal removing all reference to our affidavits.

This letter is unequivocal in advising Lipman not to use the V & E affidavits in support of Wallace's application for registration or for any purpose. In a second letter, received by Lipman the day after the appeal petition was filed, Martin reinforced his April 27 letter by advising that all of the facts recounted in it had been verified and that the opinions about Wallace's character as set forth in the V & E affidavits had changed. Martin also expressed his concern that the appeal petition "somehow *indirectly* gave the PTO

the impression that our attorneys still maintain the same beliefs and opinions as are stated in the affidavits that are on file with PTO." This concern arose because in Lipman's May 4 letter to Martin he stated that the appeal petition would not "directly refer to or quote from the Vinson & Elkins affidavits."

The evidence fully supports the findings that Lipman knew the V & E affidavits had been withdrawn and could not be relied on, and that Lipman "knowingly gave misleading information to the PTO." Initial Decision at 12, Commissioner's Decision at 9. Lipman explained in his testimony that although the V & E affidavits had been disavowed he hoped the V & E affiants would change their minds. Even if Lipman initially believed that there could be some modification of the V & E position set forth in the April 27 letter, the Commissioner properly determined that this position could not reasonably be held after Lipman received Martin's second letter on May 8 stating that all of the facts in his April 27 letter had been verified.

Lipman was also aware that the V & E affidavits were highly material. When the OED disapproved Wallace's application for registration, it noted:

> The testimonials from members of the Vincent [sic] and Elkins firm were of particular interest. They were very supportive of applicant's competence as a patent practitioner and his high standards dealing with clients and other members of the firm.... Any reapplication for registration by applicant must include evidence that he possesses good moral character and repute.... [Applicant] may refer to the affidavits from the Vincent [sic] & Elkins firm ... as establishing applicant's awareness of the proscription under 37 CFR 10.10(b) and efforts he has undertaken to comply with the proscription.

In preparing the draft of the appeal petition, Lipman relied heavily on the four V & E affidavits and directly quoted numerous sections. Lipman also acknowl-

edged the importance of these affidavits during his testimony, calling the four affidavits "the most critically favorable evidence in the record." The OED's favorable reference to the V & E affidavits, Lipman's reliance on them in the draft appeal petition, and Lipman's own testimony show that Lipman understood the materiality of the four affidavits. Knowing that the PTO regarded the V & E affidavits to be very important, Lipman did not disclose that they had been withdrawn.

■■■■ Lipman contends that the PTO presented "no competent evidence" that he intended to mislead the PTO when he filled the appeal petition on May 7, 1990. He urges that when the totality of the evidence is considered, including events occurring after that date and his actual state of mind, he did not subjectively intend to mislead. Instead, he wanted to "get to the bottom of things," and to supplement the appeal petition, if necessary, as soon as this had been done. We are not persuaded by Lipman's argument that direct evidence of his subjective intent is required to show that he intended to mislead the PTO. The law is clear that direct evidence of intent is not necessary. Rather, intent is "most often proven by a showing of acts, the natural consequences of which are presumably intended by the actor." *See Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1180, 33 U.S.P.Q.2d 1823, 1828–29 (Fed.Cir.1995). The fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent. *See Jaskiewicz,* 822 F.2d at 1058, 3 U.S.P.Q.2d at 1299, *Digital Equip. Corp. v. Diamond,* 653 F.2d 701, 709, 210 U.S.P.Q. 521, 532 (1st Cir.1981) Thus, circumstantial evidence may permit an inference of intent. *See Klein,* 866 F.2d at 415, 9 U.S.P.Q.2d at 1560; *Rohm & Haas Co. v. Crystal Chem. Co.,* 722 F.2d 1556, 1571, 220 U.S.P.Q. 289, 300 (Fed.Cir.1983) (intent to deceive inferred from likely result of filing affidavits based on falsified data). In determining whether an inference of intent can be drawn from circumstantial evidence, it is proper to consider the degree of materiality of the information. *See KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1573, 228 U.S.P.Q. 32, 33 (Fed.Cir.1985) ("[T]he more material the misrepresentation before the PTO, the lower the burden of proving intent.").

The ALJ expressly found that Lipman "knowingly gave misleading information to the PTO and in so doing, [he] intended to mislead the PTO in to [sic] believing the opinions expressed in those affidavits were still valid." Initial Decision at 12. The Commissioner adopted the ALJ's finding of intent to mislead. He concluded that the ALJ had properly considered the totality of the evidence, including the materiality of the information regarding the affidavits, the knowledge that it was incorrect, the surrounding circumstances and evidence of good faith. Commissioners Decision at 11. Because Lipman knew that the V & E affidavits had been disavowed and that these affiants' opinions of Wallace had changed based on new additional facts that had been verified and because he also knew that the V & E affidavits were deemed highly material by the OED, there is substantial evidence to support the findings of the ALJ and Commissioner that Lipman intended to mislead the PTO.

Furthermore, we consider Lipman's argument also to be unpersuasive because there is substantial evidence in the record, including Lipman's own testimony, to support a finding that Lipman subjectively intended to mislead the PTO at the time he filed the appeal petition. During his deposition testimony, Lipman discussed his decision not to reduce the references to the affidavits from 17 to 13 in the appeal petition:

If you just explain 17 to 13 and not give any explanation, don't you think someone is going to pick up the paper and say, "Well, gee, only 13 out of 17, why[?] Why[?]"

What *I wanted to avoid was why, the why question* at least until I got Mr.

Wallace's statement of the facts and the reaction [of the] V & E people.

\* \* \* \* \* \*

*You're raising a red flag about the most critically favorable evidence in the record supporting Mr. Wallace's position.* I think it's one of those Hobson's choice type of things. You either remove all explicit reference to the V & E affidavits, to the position that was taken and *correct it later.* Or you do something minimal to draw attention to the problem, but in a way it seems to me would simply be [ ] extremely counterproductive and all before you know the facts. . . .

(Emphasis added); *see also,* Initial Decision at 10.

Further, Mittelberger testified that he expressed concern to Lipman that the seventeen should be changed to thirteen in light of Martin's letter. Lipman decided to leave the references to "seventeen" affidavits and asked Mittelberger to remove all quotations from the V & E affidavits, "without explicitly stating that the V & E affidavits had been withdrawn."

Because of the materiality of the four V & E affidavits, the record establishes clearly that Lipman purposely was trying to mislead the PTO for at least some indefinite period of time. During this time he wanted to investigate the allegations against Wallace and apparently hoped he might be able to resurrect the affidavits. His own testimony that he would correct the appeal petition later if necessary confirms that in the meantime the factual representation as to the number of valid affidavits was intentionally misstated. The deliberate, calculated deception about the number of affidavits, after twice being informed that the affidavits were no longer to be used in support of Wallace's PTO appeal, proves the subjective intent that Lipman claims is missing.

■ Lipman argues on appeal that his duty to his client, and to maintain his client's confidences, justified his action in failing to inform the PTO about the withdrawn affidavits until he completed his investigation. He contends there was a conflict between this duty and the requirement of candor in dealing with the PTO. We agree with the district court that there was no such conflict in this case. The PTO relies, and should be able to rely, upon attorneys registered to practice before it to act in an honest and forthright manner in their dealings with the PTO. *See Kingsland v. Dorsey,* 338 U.S. 318, 319, 70 S.Ct. 123, 94 L.Ed. 123 (1949) ("[T]he relationship of attorneys to the Patent Office requires the highest degree of candor and good faith.").

The OED did not charge Lipman with failing to disclose the contents of Martin's letter and the allegations of Wallace's misconduct contained therein. The OED charged that he violated his duty of candor by misrepresenting the number of valid affidavits. No client confidences were involved in the disclosure that the V & E affidavits were no longer valid.

Lipman contends that he had a duty to investigate the allegations of Martin's April 27, 1990 letter. We disagree. From that letter and certainly from the time of Martin's May 7, 1990 letter Lipman was fully aware that the V & E affidavits no longer reflected the opinions of the V & E attorneys regarding Wallace's character. The accuracy of the allegations against Wallace that were disclosed in Martin's April 27, 1990 letter was not relevant to the question of whether or not the withdrawal of affidavits by the V & E attorneys should have been disclosed. The fact that the V & E attorneys no longer held their former opinions as to the character and fitness of Wallace and that the previously filed V & E affidavits could not be relied on was highly relevant. By continuing to refer to seventeen letters and affidavits, i.e., including those from the V & E attorneys, Lipman's appeal petition on behalf of Wallace intentionally left the impression that no change in the opinions of the V & E attorneys had occurred.

Lipman's contention on appeal that he was acting in good faith in investigating

the V & E allegations against Wallace and, if required, would have corrected any misrepresentation to the PTO does not absolve him of violating his duty of candor to the PTO. The evidence shows that Lipman had not corrected the misleading appeal petition by the time he received the August 1, 1990 notice from the PTO that Wallace's case had been remanded to the OED to consider Martin's April 27, 1990 letter. That Lipman may have been planning to correct the appeal petition and even took some steps in that direction does not show a good faith effort to cure the known misrepresentation. Lipman failed for nearly three months to begin the preparation of a correcting supplement to the appeal petition. We cannot consider these belated efforts to be a cure for the lack of candor exhibited when the appeal petition was filed. Further, the record shows that the steps Lipman took toward correcting the misleading appeal petition were fully considered by the Commissioner in rendering his decision and were explicitly cited as one of the reasons for the leniency of the sanction imposed. We agree that mitigating the sanction was the proper way to take into account the proposed correcting supplement that was being worked on by Lipman at the time of the PTO's notice of remand.

## CONCLUSION

Upon consideration of all the facts and circumstances involving Lipman's conduct, we agree with the district court that substantial evidence supports the decision of the Commissioner that Lipman violated 37 C.F.R. § 10.23 when he submitted the May 7, 1990 appeal petition to the Commissioner that relied on the four V & E affidavits that had been repudiated and withdrawn.

Accordingly, the judgment of the district court is affirmed.

*AFFIRMED.*

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent. The only "mistake" made by Mr. Lipman was in respecting his client's rights for the time needed to investigate the withdrawal of the endorsements by the Vinson & Elkins attorneys, instead of rushing to impeach his client without investigation, as the PTO (and my colleagues on this panel) hold was the necessary behavior. Mr. Lipman acted reasonably, responsibly, and diligently to satisfy both the lawyer's responsibility to his client and the lawyer's responsibility to the PTO. The Commissioner's reprimand was unwarranted, and should not be sustained.

When Vinson & Elkins notified Mr. Lipman that they were withdrawing their prior glowing affidavits, part of the then-closed record, he immediately inquired of his client and of the affiants. Vinson & Elkins (Mr. Martin) did not in his initial letter, dated April 27, ask that the four affidavits be withdrawn; Mr. Martin stated that "you must not refer to our affidavits in any appeal documents." Mr. Lipman immediately complied, excising from the almost-completed brief (due on May 7) all mention of and quotations from the four affidavits. However, critical to the Commissioner's decision to discipline Mr. Lipman, he did not also change the total of "17" testimonials to a new total of "13." This was the "false and misleading information" for which Mr. Lipman was disciplined.

This behavior was not culpable, and it is hard even to view it as negligent in view of the diligence with which Mr. Lipman obtained information from his client and sought it from the affiants. He acted, as he must, to consider his client's interest in light of this sudden disparagement by these previously enthusiastic supporters. Mr. Lipman can not be faulted for investigating before acting.

Indeed, it would have been highly irresponsible to act without this inquiry. Only a few days elapsed between each of the

many communications among those involved, except for the delays on the part of the Vinson & Elkins attorneys when they initially chose not to respond to his inquiries. On May 18 Mr. Lipman sent Vinson & Elkins a twenty-eight page refutation of the charges against his client. No reply was received, nor was Mr. Lipman told that no reply would be made. On June 12 Mr. Lipman again wrote, stressing the importance of a prompt reply. On July 23 a reply was mailed to Mr. Lipman, apparently triggered by a communication from the PTO in response to a direct contact by Vinson & Elkins on June 29. Even with these delays, only eleven weeks in total elapsed before Mr. Lipman prepared the document formally withdrawing the four affidavits. There is absolutely no indication of the "deliberate, calculated deception" that the majority sustains.

Most application of law is by hindsight. However, when an attorney's reputation is placed at risk, it is essential that the actions for which he is criticized be evaluated as a reasonable attorney would have acted at the time. By July 30 Mr. Lipman informed his client that "we *must* inform the PTO about V & E.... I firmly believe we must act now." (Emphasis in original.) He sent the document, prepared for filing, to the client on August 2. This was not "deliberate, calculated deception" of the PTO. Mr. Lipman acted reasonably and diligently, in fidelity to the canons and to his responsibilities to his client and to the PTO.

Meanwhile, the Commissioner, by letter mailed August 1, remanded the client's registration matter to the Office of Enrollment and Discipline for investigation of the allegations in the Vinson and Elkins letter to the PTO of June 29. On August 14 the PTO initiated an investigation of Mr. Lipman, on the basis that "The affidavits should have been withdrawn immediately after receipt of Mr. Martin's letter of April 27th...."

Mr. Lipman, now himself the subject of a disciplinary investigation, obtained waiver of the attorney-client privilege and provided the full history of these events. As evidence of the reasonableness of his actions in the circumstances that prevailed, he submitted affidavits of seven of the most respected practitioners in the fields of legal ethics and PTO attorney responsibility. These affiants made powerful statements in his support. For example, former Commissioner of Patents and Trademarks Donald W. Banner declared:

This case should never have been brought against Respondent on the basis of this record. The documented history of Respondent's involvement in informing himself and the PTO of the facts surrounding the incidents about which he is charged show absolutely no intent, reckless disregard or gross misconduct. The record discloses a concerned practitioner who was presented with third party accusations which were unsubstantiated and who made a reasonable effort to determine the truth of those accusations. The allegations contained in the [PTO] complaint indicate that there was no consideration of the totality of the circumstances—including Respondent's duty to his client, the nearly impossible position in which Respondent was placed by Mr. Martin's April 27th letter and the time pressure upon Respondent to meet a jurisdictional deadline.

Former Commissioner of Patents and Trademarks Donald J. Quigg, who instituted the PTO rules of professional conduct, declared:

[I]t is my opinion that, faced with the situation presented to him, Respondent performed in a reasonable manner under the requirements of the Ethics Rules, including Canons 6 ["A practitioner should represent a client competently."] and 7 ["A practitioner should represent a client zealously within the bounds of the law."] (37 C.F.R. 1076 and 10.83).

Herbert S. Wamsley, former Executive Assistant to three Commissioners, stated:

The only intent shown in the documented history is the intent of a practitioner who, with full dedication and integrity to

his job, went about determining the truth of third party allegations before taking any action which would irreparably harm his client's case.

An academic expert on legal ethics, Professor Charles W. Wolfram of the Cornell Law School, Chief Reporter for the *Restatement of the Law Covering Lawyers* and author of the treatise on *Modern Legal Ethics* (West), observed:

> That Mr. Martin forced the Commissioner's hand before Mr. Lipman could complete his planned course of action says nothing about the legitimacy of Mr. Lipman's own actions. That Mr. Martin insisted that Mr. Lipman take action prior to May 7 or at some other time prior to August 2 also does not determine Mr. Lipman's responsibilities. That others who fully possessed both the facts and objectivity might have taken or counselled Mr. Lipman to take a different course of action does not in the circumstances impugn what Mr. Lipman did.

Professor Wolfram concluded that "Mr. Lipman did not violate any mandatory norm in representing his client."

Two former United States Attorneys for the District of Columbia with extensive experience in legal ethics (Earl J. Silbert and Charles F.C. Ruff), also unequivocally supported Mr. Lipman's actions. Mr. Ruff, among other distinctions, had been Acting Deputy Attorney General of the United States and Chief Inspector for the Drug Enforcement Administration. He stated:

> On the raw information provided to Respondent in the April 27th Letter, it would not have been reasonable to have revealed the April 27th letter to the PTO. . . . On the basis of the factual record in this case, this disciplinary proceeding never should have been brought.

Mr. Silbert is Chairman of the Committee of Grievances of the United States District Court for the District of Columbia, Chairman of the Ethics in Government Act of the American Bar Association White Collar Crime Committee, and Chairman of the Hearing Committee for the Board of Professional Responsibility in the District of Columbia. His statement included a discussion of recanted testimony, such as the Vinson & Elkins recant. He said that during the time that he served as United States Attorney for the District of Columbia, occasionally a witness would recant while an appeal was pending. He said that while there were various procedures for dealing with such an occurrence, the appellate court could not properly consider the recantation as it was not part of the closed record before it, drawing analogy to the closed record before the PTO. Mr. Silbert said:

> [T]o allege that it was Respondent's duty immediately to inform the PTO of the April 27th letter, without inquiring further into the surrounding circumstances, ignores the complexity of the difficult ethical obligations on Respondent.

Former Assistant Commissioner for Patents Rene D. Tegtmeyer, then a partner in Mr. Lipman's firm, declared:

> [I]t is clear to me that Respondent never acted with an intent to deceive the PTO or to misstate any facts of which he had knowledge in his representation of the applicant in Proceeding E88–2.

Mr. Tegtmeyer, with whom Mr. Lipman consulted during his investigation of the allegations against the client, also testified about the conduct of that investigation.

All of these witnesses were experienced in disciplinary issues and in the ethical obligations of attorneys. All agreed, without the slightest qualification, that Mr. Lipman's conduct was appropriate and reasonable in the circumstances, and not a violation of any code or canon or other legal or ethical obligation. Professor Wolfram testified:

> I would say that if you presented lawyers in this country with this set of facts as a problem, I think, I would hope, that the ones I would consider to be noble practitioners would behave exactly the way [appellant] did. I regard this as a

case study in the way to handle a problem ... and it's a horrible thing to have to say to him from the witness stand in a case in which he is the defendant, but I think he ought to be proud of what he did.

There is no information or authority or citation contrary to the evidence provided by these witnesses and the force of their conclusions.

Mr. Lipman was constrained by the "dual trust ... imposed on attorneys at law [to] act with fidelity both to the courts and to their clients." *State v. Jackson,* 162 Conn. 440, 294 A.2d 517, 523 (1972). Mr. Lipman acted reasonably and responsibly to fulfill that trust, immediately deleting from the brief all references to and quotations from the Vinson & Elkins affidavits, asking both Vinson & Elkins and the client for the true facts, consulting with others in his firm, pursuing the matter diligently, and acting promptly to notify the PTO when it became clear that no resolution was possible. The PTO canons respect the lawyer's duty to the client as well as the lawyer's duty to the PTO. *See* PTO Canon 4 (the lawyer has the duty to protect the client's secrets).

There was no evidence whatsoever of an intent to deceive the PTO. *See Jaskiewicz v. Mossinghoff,* 822 F.2d 1053, 1059, 3 U.S.P.Q.2d 1294, 1299 (Fed.Cir.1987) (even negligence, if in good faith, is not deception). Mr. Lipman refrained from the precipitous (and irresponsible) action that the PTO states was his obligation immediately on receiving the April 27 letter. This was proper, not improper, representation. He actively and diligently investigated the matter and duly and timely prepared the appropriate documents for filing in the PTO. The circumstances do not establish a violation of 37 C.F.R. 10.23 (Misconduct). I must, respectfully but with urgent concern for this miscarried disciplinary action, dissent.